Raymond BAUSCHARD, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 14042.

United States Court of Appeals Sixth Circuit.

June 17, 1960.

Roger K. Powell, Columbus, Ohio, for petitioner. D. C. Reed, Columbus, Ohio, on the brief.

Louise Foster, Dept. of Justice, Washington, D. C., for respondent. Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Meyer Rothwacks, Attys., Dept. of Justice, Washington, D. C., on the brief.

Before MILLER, CECIL and O'SULLIVAN, Circuit Judges.

SHACKELFORD MILLER, JR., Circuit Judge.

The question involved in this appeal is whether, under the circumstances set out, the profit resulting to the taxpayer from the purchase of a 77-acre tract of unimproved farm land, its development as a residential subdivision, and the sale of building lots therein, constituted ordinary income taxable as such, or longterm capital gain under Section 117, Title 26 U.S.C., 1939 Edition, and Section 1221, 26 U.S.C., 1954 Edition.

The facts are given in detail in the Findings of Fact and Opinion of the Tax Court, reported at Bauschard v. Commissioner, 31 T.C. 910, to which reference is made. For our present purpose the following summary is sufficient to present the issue.

The taxpayer, a Catholic priest, was pastor of a parish located in a good residential community. Early in 1951, the residents of that community learned of a plan to build a low-cost housing development on a 77-acre tract of unimproved farm land some three-quarters of a mile

from the site of the parish buildings. A civic committee was organized to devise a means of preventing its erection. The taxpayer was of the opinion that the proposed project would have an undesirable influence upon the area. He suggested that an attempt be made to interest some builders in the property with an eye to constructing homes thereon in keeping with those already in existence in that community. At that time he had no intention of acquiring the property himself.

Thereafter, taxpayer and a close friend named Tonti, who was a real estate developer, discussed the possible acquisition and development of the property. Building lots in the area were in short supply. Tonti lacked the necessary funds for carrying out such a project. Taxpayer decided to purchase the property. While his primary objective was to prevent the erection of the low-cost housing project, he also expected a profitable return on his money. He interested a local druggist, Haney, in investing in the property with him. On October 29, 1951, the property was purchased for approximately $77,000.00, of which amount the taxpayer furnished two-thirds. Title was taken in the name of Waldo and Foley as trustees. Later, Waldo acted as sole trustee.

The trustees, on April 1, 1952, leased the property to Tonti for five years at an annual rental of $100.00, together with an option to Tonti to purchase any or all of the lots at a price per lot to be determined between the parties, it being understood that Tonti intended to plat, subdivide, and improve the property at his own expense. After discussion and some disagreement, taxpayer and Tonti agreed upon the price which Tonti was to pay for each lot. Tonti was authorized to enter into contracts as vendor for the sale of any lot.

The property was subdivided and improved by a corporation organized for that purpose by Tonti in April, 1952, to which Tonti assigned his interest in the lease. As each lot was sold by the corporation a deed was prepared for the trustee's signature and title was thereby transferred directly to the purchaser. Upon delivery of a lot, an accounting was made by the corporation to the trustee, who in turn notified taxpayer and Haney. The trustee deposited the money in an account as trustee for taxpayer and Haney, and upon accumulation of a sizeable amount distributed it to taxpayer and Haney in their proportionate amounts.

By October 3, 1955, all of the lots had been disposed of through sixty-five separate sales involving twenty-three purchasers. The total sales price received by the corporation was $574,208.00.

The trustee treated and reported the gains realized by the trust upon the disposition of the lots as long-term capital gains. The taxpayer reported his proportionate share thereof as long-term capital gains for each of the taxable years in question.

The Tax Court found that the lots from which the taxpayer realized gains during 1952, 1953 and 1954 were held primarily for sale to customers in the ordinary course of business and, accordingly, were not capital assets within the meaning of the statute. It held that the gain so realized was taxable as ordinary income, with resulting income tax deficiencies for the years 1952, 1953 and 1954. The taxpayer has petitioned for a review.

■ It is well settled that the question of whether property sold by a taxpayer at a profit was property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, within the meaning of the statute, is essentially a question of fact. Dougherty v. Commissioner, 6 Cir., 216 F.2d 110; Shepherd v. United States, 6 Cir., 231 F.2d 445; Harry Slatkin Builders, Inc. v. Commissioner, 6 Cir., 235 F.2d 189, certiorari denied 352 U.S. 928, 77 S.Ct. 227, 1 L.Ed.2d 163; Home Co. v. Commissioner, 10 Cir., 212 F.2d 637, 639; Rubino v. Commissioner, 9 Cir., 186 F.2d 304, certiorari denied 342 U.S. 814, 72 S.Ct. 28, 96 L.Ed. 615; McCord v. Granger, 3 Cir., 201 F.2d 103,

105; Rider v. Commissioner, 8 Cir., 200 F.2d 524, 525; Simonsen Industries, Inc. v. Commissioner, 7 Cir., 243 F.2d 407, 408.

Necessarily, each case turns upon its own particular facts; no one circumstance or factor is controlling. Friend v. Commissioner, 10 Cir., 198 F.2d 285, 287, 46 A.L.R.2d 761; Kaltreider v. Commissioner, 3 Cir., 255 F.2d 833, 838; Gudgel v. Commissioner, 6 Cir., 273 F.2d 206, 210; Winnick v. Commissioner, 6 Cir., 199 F.2d 374. These cases give the major factors to which consideration is given, and it is unnecessary to restate them here.

▆▆▆ The petitioner relies strongly upon the fact that his primary objective in buying the property was to prevent the erection of the low-cost housing project, and that under the ruling of this Court in Yunker v. Commissioner, 6 Cir., 256 F.2d 130, the subsequent development of it as a residential subdivision and separate sales of the lots therein did not constitute sales to customers in the ordinary course of his trade or business. See also: Gudgel v. Commissioner, supra, 6 Cir., 273 F.2d 206. While the purpose for which the property was acquired is of some weight, the ultimate question is the purpose for which the property is held. The statute uses the express words "property *held* by the taxpayer." (Emphasis added.) Rollingwood Corp. v. Commissioner, 9 Cir., 190 F.2d 263, 266; Richards v. Commissioner, 9 Cir., 81 F.2d 369, 372–373, 106 A.L.R. 249. If the property was acquired for the dual purpose of protection of the community and its subsequent development and sale as a business proposition, the purchase for the purpose of protection does not mean that the property was not held, developed and disposed of in the ordinary course of trade or business. Compare: Philber Equipment Corp. v. Commissioner, 3 Cir., 237 F.2d 129, 131–132. The Tax Court found that although the primary objective was to prevent the erection of the low-cost housing project, the taxpayer also expected a profitable return on his money. This finding is fully supported by the evidence. This is a materially different factual situation from those existing in the Yunker and Gudgel cases.

▆▆▆ The petitioner also contends that since the property was under option to Tonti and petitioner was limited to receiving from Tonti a definite, limited sum for each lot, such payments to him were partial payments upon the total purchase price, and that Tonti alone was engaged in the development of the subdivision and sale of the lots. Such contention might have merit if the option for the property as a whole had been exercised by Tonti before the development and sale of the lots. But, we do not find that the option was so exercised. In fact, title to the purchaser of each lot passed from the trustee to the purchaser by deed executed in the name of the trustee as each lot was purchased. Under the circumstances, it seems clear as a legal proposition that Tonti was acting both for himself and the petitioner in the sale of each individual lot. The Tax Court considered the matter as a joint venture on the part of the petitioner and Tonti, to which finding the petitioner vigorously objects. Whether the arrangements between the two were technically sufficient to constitute a joint venture, we regard as immaterial. If not a joint venture, the relationship of principal and agent clearly existed. A taxpayer may engage in business through an agent, and the sales activities of an agent for the benefit of the principal will be imputed to the principal. Achong v. Commissioner, 9 Cir., 246 F.2d 445, 447; Richards v. Commissioner, supra, 9 Cir., 81 F.2d 369; Fackler v. Commissioner, 6 Cir., 133 F.2d 509, 511; Kaltreider v. Commissioner, supra, 3 Cir., 255 F.2d 833, 838.

We are of the opinion that, considering the evidence as a whole and under the authorities hereinabove referred to, the decision of the Tax Court is correct and should be affirmed.