Samuel S. BROUGHTON and Loretta T. Broughton, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 15324.

United States Court of Appeals Sixth Circuit.

June 25, 1964.

William C. Allee and Walter J. Murray, Detroit, Mich., for petitioners.

J. Edward Shillingburg, Department of Justice, Washington, D. C., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Harry Baum, Attorneys, Department of Justice, Washington, D. C., on brief, for respondent.

Before O'SULLIVAN, Circuit Judge, McALLISTER, Senior Circuit Judge, and WILSON, District Judge.

FRANK W. WILSON, District Judge.

This is an appeal from the decision of the Tax Court. The appellants, Samuel S. Broughton and Loretta T. Broughton, husband and wife, filed joint federal income tax returns for the years 1954 and 1955. The taxpayers reported in these returns certain income from the sale of separately owned real estate as long term capital gains. They also deducted certain expenses claimed by the husband to be entertainment and travel expense. The Commissioner of Internal Revenue made a determination that the real estate sold by each party in each year here involved was held by the respective taxpayer primarily for sale to customers in the ordinary course of business and that consequently the profits arising from the sales were taxable as ordinary income rather than as long term capital gains. The Commissioner also made a determination that a portion of the expenditures deducted as business entertainment and travel expense should be disallowed as a deduction. The Tax Court sustained the determination of the Commissioner upon each issue. Thus the two principal issues presented by this appeal are whether the Tax Court was in error in holding that the income from sales of real property was ordinary income not subject to capital gains treatment and in holding that expenses in excess of the amount allowed by the Commissioner of Internal Revenue were not properly deductible as business entertainment and travel expense.

The facts relevant to the initial issue stated above appear to be largely undisputed and were to a considerable extent stipulated. Without attempting to set forth the facts in detail, there is substantial evidence in the record to support the following summary of the facts.

Samuel S. Broughton, a former bank trust officer, began a private trust business in 1938. Beginning in 1940, he became interested in some real estate located in Wyandotte, Michigan, and designated generally as the West Park Development. Some 700 lots in this area had passed to the state for unpaid real

estate taxes, but the former owner, one L. F. Knowles, had priority rights to repurchase these. In January of 1940, Knowles agreed with others, in return for financing, to exercise his priority rights to purchase 333½ of these lots from the state, it being a part of the agreement that Broughton would act both as a co-trustee to hold title to the lots and as the commission agent for the sale of the lots, the lots to be sold to the public "at the earliest possible date" and the proceeds shared after return of investment and payment of expenses. In April 1940, Broughton and Knowles entered into a similar agreement, with Knowles agreeing to exercise his priority to purchase an additional 335 lots in the same area and with Broughton agreeing to furnish the financing, the lots again to be offered for sale to the public "at the earliest possible date" and Broughton again to act as the commission sales agent. By further agreement of. the parties, Mrs. Broughton actually furnished the funds under this agreement and shared the profits in lieu of Mr. Broughton upon the 335 lots. The record reflects that she was a housewife, and her personal participation was limited to the providing of funds, with the active management of her interests being conducted by Mr. Broughton, he acting for her in a capacity described in the trial stipulation of the parties as a "trust officer." He also did in fact, as provided in the agreement with Knowles, act as commission sales agent for the lots.

Between 1941 and 1955, Broughton acquired some 70 or more lots scattered throughout the subdivision in his individual name.

In 1942, The West Park Building Company, a corporation, was organized with Broughton owning 97% of the stock. This company was used as the building corporation to systematically develop the West Park area. Over the years it constructed approximately 95% of the houses in the area, and between 1942 and 1955 practically all of the lots purchased as stated above were sold .to the West Park Building Company after it had in

each instance located a purchaser for the home to be built by it. Broughton was also the sales agent for this corporation. Thus, a systematic method for the overall development and sale of the area was followed between 1942 and 1955, with Broughton coordinating the effort and acting as the sales agent both to and from the West End Corporation and with lots being sold to the West End Corporation as rapidly as the market would produce purchasers for homes from the West End Corporation.

The 335 lots in which Mrs. Broughton had an interest, along with Knowles, were fully acquired by 1945 and were gradually sold in the manner described above with the final lots being sold in 1954, except for a few taken in Mrs. Broughton's individual name and used by her for commercial purposes. During this year her share of the profits was $12,505.36, which she reported for income tax purposes upon a long term capital gains basis.

Likewise, Mr. Broughton gradually sold his individually owned lots between 1949 and 1955 in the manner described above, with the last such lot being sold in 1955. He realized a profit upon these in 1954 of $9,782.50 and in 1955 of $3,-882.50, which he reported in the respective tax years upon a long term capital gains basis.

■■ Section 1221(1) of the Internal Revenue Code of 1954, in defining "capital assets" for the purpose of determining capital gains and losses, excludes from the category of capital assets "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." The gain from the sale of property which is excluded from the definition of capital assets is taxable as ordinary income. Thus, the initial issue.for determination is whether the Tax Court was correct in holding that the lots held respectively for Mr. Broughton and Mrs. Broughton were held primarily for sale to customers in the ordinary course of their trade or business. This.issue is essentially a factual one, the determination of which nec-

essarily depends upon the facts and circumstances in each particular case and no one fact or circumstance is controlling. Bauschard v. Commissioner, 279 F.2d 115 (C.C.A.6, 1960). The factors which are usually applicable in making such a determination were summarized by this Court in Mathews v. Commissioner, 315 F.2d 101 (C.C.A.6, 1963). Among the factors there pointed out to be considered are (1) the purpose for which the property was acquired; (2) the purpose for which the property was held; (3) the improvements and their extent, which were made to the property by the taxpayer; (4) the frequency, number, and continuity of sales; (5) the extent and substantiality of the transaction; (6) the nature and extent of the business of the taxpayers; (7) the extent of advertising to promote sales, or the lack of such advertising; (8) the listing, if any, of the property for sale directly or through brokers. See also Kaltreider v. Commissioner, 255 F.2d 833 (C.C.A.3, 1958) and Bauschard v. Commissioner, 279 F.2d 115 (C.C.A.6, 1960).

. [3] A factual determination by the Tax Court upon the issue now before this Court may not be set aside upon appeal unless it is clearly erroneous. United States v. United States Gypsum Company, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746, rehearing denied, 333 U.S. 869, 68 S.Ct. 788, 92 L.Ed. 1147. It is the contention of the taxpayer, however, that the overwhelming weight of the evidence establishes that Mrs. Broughton made the purchase of her interest in the lots as an investment, and not for the purpose of engaging in the real estate business. It is further contended that this is borne out by the fact that her husband was by stipulation acting as her trust officer, and could not therefore be acting as her agent, and by the fact that the lots sold in 1954 had been held 14 years by her. Taking up the latter contention first, it is undisputed that the agreement by which she acquired her interest in the lots provided that the lots would be sold to the public "at the earliest possible date." There is evidence in the record from which the Tax Court could properly conclude that Mrs. Broughton purchased the lots with the intention and for the purpose of resale in spite of the lapse of 14 years before the final lots were sold. From the evidence, it can be reasonably concluded that Mrs. Broughton's lots were sold as a part of the overall plan for the orderly development and sale of West Park Development and they were sold as promptly as the market would permit consistent with maintaining a favorable price level upon all lots to be sold.

■■ With reference to the contention that Mrs. Broughton could not be charged with engaging in the real estate business by reason of the real estate activities of her husband in the management of her affairs under any theory of agency, as found by the Tax Court, because of the stipulation that he "acted as trust officer" during the period of her agreement with Knowles, this stipulation would not preclude a finding that he also acted in one or. more respects as her agent. While by stipulation he may have acted in the capacity of trust officer for the reinvestment of the proceeds of sales of lots, as stated in the stipulation, it does not follow that this excludes his acting as agent in the sale of the lots. That the stipulation did not require a finding that Mr. Broughton acted as trustee for Mrs. Broughton in the sales of lots is borne out by the fact that Knowles himself under the agreement held the lots for sale as trustee and by the fact that the express agreement was that Mr. Broughton should be paid a commission as sales agent for the sale of the lots. The nomenclature given a transaction by the parties thereto is significant only as it reveals the real intentions of the parties.. The tax consequences of a transaction must ultimately be determined by a realistic and common sense interpretation of the actions of the parties and of their real intentions and purposes. The trial court is the proper forum for the original making of this factual determination and

its decision should not be disturbed upon appeal unless it is shown to be clearly erroneous.

It is likewise contended by the taxpayer that the lots held in the individual name of Mr. Broughton and sold in 1954 and 1955 were capital assets in that they were purchased as an investment for the purpose of educating his three children. The record does not support the contention that these lots were placed in an investment account for the children or handled in any manner different from the other properties held for sale. Rather, the lots were put up for sale in the regular course of the operations of the building company and as a part of the overall plan supervised by Mr. Broughton for the orderly development and sale of the West Park area. The lots were sold as promptly as a market developed for them under this plan.

■ Upon the evidence in the record in this case, this Court is of the opinion that there is substantial evidence to support the findings of the Tax Court in holding that the lots held by both Mr. and Mrs. Broughton were held primarily for sale to customers in the ordinary course of their business, and this decision cannot be said to be clearly erroneous.

■ Turning next to the petitioner's claim of error in the Tax Court's disallowance of a portion of the deduction claimed for business entertainment and travel expense during the years 1954 and 1955, it appears that the petitioner claimed such deductions in the total amount of $2530.98 in 1954 and $2057.99 in 1955. Included in these sums were dues in excess of $1300.00 per year for two golf clubs and a yachting club, $750.00 for convention expenses, and a uniform $35.-00 a week for automobile and entertainment expenses. The Commissioner disallowed these entertainment and travel expenses as not being shown to be ordinary and necessary business expenses beyond the extent of $600.00 per year. The Tax Court affirmed this ruling. In reviewing the testimony of Mr. Brough-

ton, which constituted the only testimony in the record in support of the claimed deductions, the Tax Court stated:

"His testimony with respect thereto is so vague, general and inconclusive as to afford us no opportunity to determine with any degree of finality how much of such expenditure bore a proximate relationship to the petitioner's business."

We have reviewed the record upon this issue and are in accord with the Tax Court's finding.

The decision of the Tax Court is accordingly affirmed.