**PHILHALL CORPORATION,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

**No. 75–2389.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 14, 1976.

Decided Dec. 15, 1976.

Ervin M. Entrekin, Thomas V. White, John W. Nelley, Jr., Nashville, Tenn., for plaintiff-appellant.

Charles H. Anderson, U.S. Atty., Nashville, Tenn., Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Jr., Appellate Sect., Tax Div., Dept. of Justice, Washington, D.C., Gary R. Allen, Daniel F. Ross, Washington, D.C., for defendant-appellee.

Before PHILLIPS, Chief Judge, WEICK, Circuit Judge, and CECIL, Senior Circuit Judge.

PHILLIPS, Chief Judge.

This case involves a suit for a refund of federal income taxes paid on the sale of an option on land. The taxpayer, Philhall Corporation, contends that the option was a capital asset in its hands and that it was entitled to capital gains treatment on its sale. The United States asserts that the

option, having the same character as the underlying land, was inventory or property of the taxpayer, held for sale in the ordinary course of business and not entitled to capital gains treatment. After a trial and a favorable jury verdict for the taxpayer, the District Court entered a judgment notwithstanding the verdict denying the taxpayer its refund. We affirm.

Philhall has been engaged in various facets of the real estate business, but primarily the construction and sale of homes. Its charter recognizes the following corporate purposes:

1. To engage in the business of developing real estate.

2. To carry on and conduct any and every kind of general contracting and construction business.

3. To take, acquire, buy, hold, own, hire, maintain, develop, sell, convey, lease, mortgage, pledge, exchange, improve and otherwise deal in and dispose of real estate and real property, or any interest or right therein, and all other kinds of property . . . without limit . . . .

   \*   \*   \*   \*   \*   \*

5. To operate a general real estate agency and brokerage business, including the renting and managing of estates.

On November 19, 1969, the taxpayer entered into an option to purchase 188 acres of undeveloped land from the Tennessee Baptist Children's Home, Inc. The contract between the taxpayer and the Baptist Home stated: "It is understood and agreed by and between the parties that the property is being purchased by the Buyer for the purpose of developing same as a subdivision." The agreement also provided that Philhall would proceed to take affirmative steps toward obtaining the rezoning of the property and the approval of subdivision plats by the City of Brentwood. Under the terms of the contract, a $10,000 earnest money payment could not be refunded until Philhall had made all reasonable efforts to get rezoning and approval of its subdivision plans without success.

On May 11, 1970, representatives of the taxpayer appeared before the Brentwood Planning Commission. As reflected in the minutes of the Planning Commission, their purpose was to "present an informal plat for development of" the property. Prior to the appearance before the Commission, a representative of Philhall told James L. Murphy of Philhall's intention to develop the property and asked him to prepare informal plats of different uses to which the land could be put. Taxpayer's president circulated these drawings at the May 11, 1970, meeting and told the Planning Commission that the drawings illustrated what the taxpayer wanted to do with the land. However, no formal zoning request was submitted. Taxpayer's president appeared at another meeting of the Planning Commission seeking zoning advantageous to the property, but again there was no formal request.

No engineering feasibility studies were performed and no formal subdivision plans were prepared, but aerial photographs of the property were taken. Inquiries were made of both the City of Brentwood and its architectural engineers regarding the status of a Brentwood sewage system. Such a system would have allowed a higher density, more profitable development of the property. Throughout the time the taxpayer owned the property it was carried on its books as inventory land and costs incurred were described as development costs.

On February 15, 1971, the taxpayer sold its interest in the option to a limited partnership known as Brentwood South. The partnership included the taxpayer and the taxpayer's president and vice-president. The profits received in 1971 on the installment sale were treated as ordinary income and taxes were paid accordingly. A year later the taxpayer filed for a refund, claiming it had made an error in accounting and that the profit from the sale was a long-term capital gain. After the refund was denied, the present suit was filed in the District Court, seeking recovery of $6,248.83, plus interest.

A trial of the issue was conducted and a jury found that the sale was taxable as long-term capital gain. Two days after the conclusion of the trial the clerk of the court entered a document titled "Judgment" in the record and sent a copy to each party. The document set forth the following:

It is Ordered and Adjudged that interrogatories were submitted to, and the jury answered as follows:

INTERROGATORIES

IS THE SALE TAXABLE AS

ORDINARY INCOME _____

OR AS

A CAPITAL GAIN \_\_\_\_XXX\_\_\_\_

(CHECK APPLICABLE LINE)

Fifteen days after the entry of the "Judgment," the United States filed a motion for judgment notwithstanding the verdict, or in the alternative, a motion for a new trial. On October 8, 1975, District Judge L. Clure Morton entered an order granting the judgment n. o. v. and dismissed the action on the merits. The taxpayer appeals from that order.

■ The first issue on appeal concerns the timeliness of the motion for judgment n. o. v. Rule 50(b) of the Federal Rules of Civil Procedure provides that a motion for judgment notwithstanding the verdict must be made within ten days after the entry of judgment. In the absence of a timely motion, the courts do not have the power to grant such relief. *Johnson v. New York, New Haven & Hartford Railroad*, 344 U.S. 48, 50, 73 S.Ct. 125, 97 L.Ed. 77 (1952).

Appellant argues that the first document entered by the clerk of the court was a judgment in the case and that the defendant's motion for judgment n. o. v. was too late. In support of its position the taxpayer asserts the document was titled "Judgment," that it was set forth on a separate document, and that the jury decision was simple and precise. In such cases, the appellant argues, the rules clearly contemplate prompt entry of the verdict by the clerk of the court. It is a ministerial duty and, according to the rules, needs no approval from the court.

The record demonstrates, however, that the first document was not a judgment but a mere clerical error. The District Court had informed counsel that judgment would not be entered until after recomputation of the amount of the refund to be paid by the Internal Revenue Service. The District Judge in his findings stated that, "[n]either the Court nor the Clerk's Office considered or intended that to be the final judgment in this cause of action."

In addition to the fact that the court never intended the document to be a final judgment, the document itself was not legally sufficient to constitute a final judgment. As the Supreme Court recognized in *United States v. F. & M. Schaefer Brewing Co.*, 356 U.S. 227, 232, 78 S.Ct. 674, 678, 2 L.Ed.2d 721 (1958), a tax refund suit is an action for money only, and "it is necessary to determine whether the language . . . [of any purported judgment] embodies the essential elements of a judgment for money and clearly evidences the judge's intention that it shall be his final act in the case. If it does so, it constitutes his final judgment."

In *Schaefer* the Court held that the award of a monetary sum was a vital part of the decision in a refund action:

[I]t is obvious that a final judgment for money must, at least, determine, or specify the means for determining, the amount . . . and an opinion, in such a case, which does not either expressly or by reference determine the amount of money awarded reveals doubt, at the very least, whether the opinion was a *"complete act of adjudication"*—. . . 356 U.S. at 233–34, 78 S.Ct. at 678.

■ It is clear that the document entered in the present case did not have the indicia of a final judgment. It failed to state whether the taxpayer was to receive the refund and interest requested in its complaint. Moreover, if there was to be such an award, the document failed to specify the amount of the refund and the dates for

computing interest. Additional action by the District Court was required.

Further, Rule 58 of the Federal Rules of Civil Procedure was rewritten in 1963 to help clarify what should be treated as a judgment. The revised rule provides that upon a general verdict of the jury the clerk shall prepare, sign and enter judgment without any direction by the court, unless the court orders otherwise. Appellant argues that the jury verdict here was simple and absolute, in the nature of a general verdict, and required no approval of the court. Therefore, appellant contends that it was not error for the clerk to enter a final judgment. This argument ignores the fact that what the jury returned was merely the conclusion that the gain was capital gain and nothing more. The verdict was more on the order of a special verdict than a general verdict resolving the entire case. As a special verdict it would have required the approval of the District Judge, which was not given, before it could have been entered by the clerk. Rule 58, Federal Rules of Civil Procedure. For all these reasons, we hold that the document entered by the clerk on August 14, 1975, was not a judgment and that the motion for judgment n. o. v. was timely made.

■ The second and final issue on appeal is the propriety of the District Court's judgment notwithstanding the verdict, denying the taxpayer capital gain treatment on the profit made from selling its option. In general, gain is treated as capital gain if it arises from a sale or exchange of a capital asset held for more than six months. The crux of the problem here is whether the option to purchase the land in question qualifies as a capital asset within the meaning of § 1221 of the Internal Revenue Code. This section provides:

> For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include—
>
> (1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of

the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business; 26 U.S.C. § 1221.

■ The appellee contends that the ultimate determination as to whether the property was held "primarily for sale to customers" under the facts of a particular case is to be treated as a legal rather than a factual determination. As authority it cites a Fifth Circuit case, *Biedenharn Realty Co. v. United States*, 526 F.2d 409 (5th Cir. 1976). *Biedenharn* is the latest in a long line of Fifth Circuit cases so holding. No other Circuits are cited as adhering to that view. This Circuit has taken the position that the ultimate issue is a factual one. *Mathews v. Commissioner*, 315 F.2d 101 (6th Cir. 1963); *Bauschard v. Commissioner*, 279 F.2d 115 (6th Cir. 1960); *Dougherty v. Commissioner*, 216 F.2d 110 (6th Cir. 1954). The determination of whether the tract of land was held primarily for sale hinges on the intent of the parties. Ascertaining this intent, including weighing the statements of the parties, is within the province of the finder of the facts. There is no reason in the present case for this court to reconsider our prior holdings.

■ In passing on a motion for a judgment notwithstanding the verdict the trial judge must view the evidence in the light most favorable to the non-moving party. *Perry v. Gulf, Mobile & Ohio Railroad Co.*, 502 F.2d 1144 (6th Cir. 1974). Viewing the evidence in this light, the grant of a judgment n. o. v. was proper only if the evidence in the present case was such that a reasonable person could reach only one conclusion. *Reeves v. Power Tools, Inc.*, 474 F.2d 375 (6th Cir. 1973).

■ This court has held that no factor or test is determinative in ascertaining whether property was held by the taxpayer primarily for sale to customers in the ordinary course of business. *Mathews v. Commissioner, supra*, 315 F.2d at 107. Among the factors to be considered are the purpose for which the property was acquired, the

purpose for which it was held, the nature and extent of the taxpayer's business and the improvements and their extent made to the property by the taxpayer. *Broughton v. Commissioner,* 333 F.2d 492, 495 (6th Cir. 1964); *Mathews v. Commissioner, supra,* 315 F.2d at 107. These factors are not to be considered mechanically, but with a view to determining the intent of the taxpayer.

In this case the taxpayer contends that the reason for the acquisition was to hold the property as an investment. Yet the plain wording of the contract with the Tennessee Baptist Children's Home indicates that development or subdivision of the land was intended. As for Philhall's reasons for holding the property, the only objective facts revealed by the record are the appearances before the Brentwood Planning Commission at which time the Commission was told that the taxpayer intended to develop the land. At one Commission meeting, drawings showing future construction were circulated. The taxpayer was in the business of constructing and selling new homes and had done so previously in the Brentwood area. Aerial photographs, used in engineering subdivisions, were taken. No actual improvements were made to the land, but inquiries about city sewers and zoning were made.

■ The president of Philhall testified that his corporation became interested in the Tennessee Baptist Children's Home property because, "I thought it was a good investment." In *Raymond v. United States,* 511 F.2d 185, 189 (6 Cir. 1975), a case involving, like this one, taxpayer intent, this court held that the testimony of the taxpayer as to intent, standing alone and unsupported by objective facts, was insufficient as a matter of law and affirmed a directed verdict in favor of the Government. The testimony of the president of the taxpayer corporation as to intent in the present case is not supported by objective facts, and, therefore, is no bar to the granting of judgment n. o. v. Public policy and the prevention of fraud require that when the intent of the party is crucial to determining the tax consequences of a transac-

tion, the taxpayer's statements as to his intent should not, by themselves, be enough to justify a jury verdict in his favor when there is contrary objective evidence. Contemporaneous facts, not self-serving testimony given years later, are important in establishing intent. *Raymond v. United States, supra,* 511 F.2d at 190.

■ Appellant argues that under the Supreme Court decision in *Malat v. Riddell,* 383 U.S. 569, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966), it can have a dual purpose in holding the option, so long as the primary purpose was for investment. However, the only objective evidence produced at the trial supports the holding of the District Court that the primary purpose was not for investment. Based upon our review of the record, we agree with the District Court that the evidence is overwhelming that the taxpayer's primary purpose was not to hold the property for investment, but rather for resale to customers in the ordinary course of business.

Affirmed.