**Francis E. GARTRELL and Mabel L. Gartrell, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 78–1058.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 8, 1980.

Decided April 2, 1980.

---

John H. Cary, U. S. Atty., Chattanooga, Tenn., M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Chief, App. Section, Jonathan S. Cohen, Aaron P. Rosenfeld, Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant.

Hunter D. Heggie, Jan Tore Hall, Stophel, Caldwell & Heggie, Chattanooga, Tenn., for plaintiffs-appellees.

1. The record indicates that this one-half interest may have been purchased or given to the

Before KENNEDY and MARTIN, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

HARRY PHILLIPS, Senior Circuit Judge.

This appeal involves the question of whether income received by the plaintiffs-appellees (the taxpayers) from sale of real estate in 1973 was taxable as a long-term capital gain or as ordinary income. The taxpayers reported the income as a long-term capital gain. The Internal Revenue Service determined that the gains should have been reported as ordinary income. The taxpayers filed a claim for refund and brought this action for recovery of taxes paid, plus interest.

District Judge Frank W. Wilson, sitting without a jury, made findings of fact to the effect that the real estate was not held by the taxpayers "primarily for sale to customers in the ordinary course of [their] trade or business" within the meaning of 26 U.S.C. §§ 1231 and 1237, and that the gain realized by the taxpayers should have been treated as a long-term capital gain for the purpose of computing federal income taxes for the year 1973. Judgment was entered granting the taxpayers a recovery of $1,390.08, including interest. The Government appeals. We affirm.

I

Appellee Dr. Francis E. Gartrell was Director of Environmental Planning for the Tennessee Valley Authority from 1956 until his retirement in 1973. Mrs. Gartrell is a housewife. On November 28, 1956, the taxpayers purchased for $2,362.50 a one-fourth undivided interest in a tract of land on the shores of Watts Bar Lake in Roane County, Tennessee. Contemporaneously, a Mrs. Hollis purchased another one-fourth interest in the tract. The remaining one-half interest was owned by E. Wayne Gilley.[1]

children of E. Wayne Gilley. The trust instrument of August 1958, discussed in Part IV of

Dr. Gartrell stated that his interest was purchased as a long-term investment to help "provide adequate income after retirement." He owned no other business real estate and never had a license as a real estate broker.

The tract of land was named the Lake Harbor Subdivision by the taxpayers and their co-owners. The property was surveyed during 1958 and 1962. No improvements were made by the owners except the construction of a few gravel roads. In 1958 a public auction resulted in the sale of 19 lots. Sales were scattered during succeeding years, averaging approximately 2.6 sales per year.

The present suit involves the proceeds from three lots and a tract sold in 1973.

## II

■ The Government contends that the "clearly erroneous" standard of review prescribed by Fed.R.Civ.P. 52(a) should not be applied to the ultimate finding of fact of the district court on the present appeal because the basic facts are undisputed. The Government's brief asserts this position in the following language:

> It is the Government's position that where the objective evidentiary facts are determinative, and are basically not in dispute, the ultimate conclusion as to whether property is held primarily for sale in the ordinary course of business is more properly one of application of legal standards and should, thus, be subject to full review by the Court of Appeals, free from the strictures of the clearly erroneous rule. When the underlying facts are not in dispute, the trier of fact (in this case, the District Court) has no more expertise than the court of appeals to determine the so-called "ultimate fact." Therefore, to bind the reviewing court to the clearly erroneous standard of review in such situations will not further the purpose of that rule. This point of view

has been adopted by the Third, Fourth and Fifth Circuits. *Jersey Land & Development Corp. v. United States*, 539 F.2d 311, 315 (C.A.3, 1976); *Turner v. Commissioner*, 540 F.2d 1249, 1252 (C.A.4, 1976); *Slappey Drive Ind. Park v. United States*, 561 F.2d 572, 587, fn. 27 (C.A.5, 1977);

In *Commissioner v. Duberstein*, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960), the Supreme Court held that the question of whether a conveyance was a gift for tax purposes, an "ultimate fact", was an issue on which primary weight "must be given to the conclusions of the trier of fact", 363 U.S. at 289, 80 S.Ct. at 1199, and that "where the trial has been by a judge without a jury, the judge's findings must stand unless 'clearly erroneous.' Fed.Rules Civ. Proc. 52(a)." 363 U.S. at 291, 80 S.Ct. at 1200. The rule applies "also to factual inferences from undisputed basic facts." *Id.*

In *Broughton v. Commissioner*,[2] 333 F.2d 492, 495 (6th Cir. 1964), District Judge Frank W. Wilson, sitting as a visiting judge on this court, wrote a Sixth Circuit opinion applying the clearly erroneous rule in a case involving the ultimate question of whether real estate was "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." Judge Wilson speaking for this court said:

> Section 1221(1) of the Internal Revenue Code of 1954, in defining "capital assets" for the purpose of determining capital gains and losses, excludes from the category of capital assets "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." The gain from the sale of property which is excluded from the definition of capital assets is taxable as ordinary income. Thus, the initial issue for determination is whether the Tax Court was correct in holding that the lots held respectively for Mr. Broughton and Mrs. Broughton were held primarily for sale to customers in the ordinary course of their

---

this opinion, was signed by Gilley and his wife, Lois D. Gilley. For the purpose of this opinion, we assume that the one-half interest was owned by Gilley.

**2.** This opinion is cited three times in the brief of the Government in the present case.

trade or business. This issue is essentially a factual one, the determination of which necessarily depends upon the facts and circumstances in each particular case and no one fact or circumstance is controlling. *Bauschard v. Commissioner*, 279 F.2d 115 (C.C.A.6, 1960).

\* \* \* \* \* \*

A factual determination by the Tax Court upon the issue now before this Court may not be set aside upon appeal unless it is clearly erroneous. *United States v. United States Gypsum Company*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746, rehearing denied, 333 U.S. 869, 68 S.Ct. 788, 92 L.Ed. 1147.

333 F.2d at 494–95.

In *Philhall v. United States*, 546 F.2d 210, 214 (6th Cir. 1976), this court said:

The appellee contends that the ultimate determination as to whether the property was held "primarily for sale to customers" under the facts of a particular case is to be treated as a legal rather than a factual determination. As authority it cites a Fifth Circuit case, *Biedenharn Realty Co. v. United States*, 526 F.2d 409 (5th Cir. 1976). *Biedenharn* is the latest in a long line of Fifth Circuit cases so holding. No other Circuits are cited as adhering to that view. This Circuit has taken the position that the ultimate issue is a factual one. *Mathews v. Commissioner*, 315 F.2d 101 (6th Cir. 1963); *Buschard v. Commissioner*, 279 F.2d 115 (6th Cir. 1960); *Dougherty v. Commissioner*, 216 F.2d 110 (6th Cir. 1954). The determination of whether the tract of land was held primarily for sale hinges on the intent of the parties. Ascertaining this intent, including weighing the statements of the parties, is within the province of the finder of the facts. There is no reason in the present case for this court to reconsider our prior holdings.

To like effect see *Bauschard v. Commissioner*, 279 F.2d 115, 117 (6th Cir. 1960), aff'g, 31 T.C. 910; *Fackler v. Commissioner*, 133 F.2d 509, 511 (6th Cir. 1943).

In *Bush v. Commissioner*, 36 T.C.M. (CCH) 340 (1977), aff'd, 610 F.2d 426 (6th Cir. 1979), the Tax Court said:

Whether certain property is a capital asset, property used in a trade or business, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business is a factual question. *Mauldin v. Commissioner*, 195 F.2d 714, 716 (10th Cir. 1952); *Fackler v. Commissioner*, 133 F.2d 509, 511 (6th Cir. 1943); *Raymond Bauschard*, 31 T.C. 910, 915 (1959), affd. 279 F.2d 115, 117 (6th Cir. 1960).

In *United States Steel Corporation v. Fuhrman*, 407 F.2d 1143, 1145 (6th Cir. 1969), cert. denied, 398 U.S. 958, 90 S.Ct. 2162, 26 L.Ed.2d 542 (1970), this court held in an admiralty case that the findings of fact of the district judge, sitting without a jury, are to be reviewed under the clearly erroneous standard notwithstanding the fact that the entire appellate record consisted of depositions, written reports and other written evidence, and no oral testimony was offered.

We refuse to depart from the clearly erroneous standard of review in the present case.

### III

■ In the alternative the Government contends that there is no substantial evidence in the record to support the findings of the district court.

In determining this issue, the statute according preferential treatment to capital gains is to be construed narrowly "so as to protect the revenue against artful devices." *Commissioner v. Lake*, 356 U.S. 260, 265, 78 S.Ct. 691, 694, 2 L.Ed.2d 743 (1958). *See also Corn Products Refining Company v. Commissioner*, 350 U.S. 46, 52, 76 S.Ct. 20, 24, 100 L.Ed. 29 (1955); *Omer v. United States*, 329 F.2d 393, 395 (6th Cir. 1964); *Cline v. Commissioner*, 617 F.2d 192 (6th Cir. 1980).

■ The taxpayers have the burden of proving that the IRS classification of the proceeds of the sale as ordinary income is erroneous. *Welch v. Helvering*, 290 U.S.

111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933); *Mathews v. Commissioner*, 315 F.2d 101, 106 (6th Cir. 1963).

In *Mathews v. Commissioner*, 315 F.2d 101, 107 (6th Cir. 1963), this court set forth the following factors to be considered in determining whether properties are held for the primary purpose of sale to customers in the ordinary course of business:

It is well settled that the question whether property sold by a taxpayer at a profit was property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, within the meaning of the statute, is essentially a question of fact. *Bauschard v. C. I. R.*, 279 F.2d 115 (C.A.6). No single factor or test is dispositive. Among the factors considered are: (1) the purpose for which the property was acquired; (2) the purpose for which it was held; (3) improvements and their extent, made to the property by taxpayer; (4) frequency, number and continuity of sales; (5) the extent and substantiality of the transactions; (6) the nature and extent of taxpayer's business; (7) the extent of advertising to promote sales, or the lack of such advertising; and (8) listing of the property for sale directly or through brokers. *Kaltreider v. Commissioner of Internal Revenue*, 255 F.2d 833 (C.A.3). While petitioner may well have purchased and held certain of these properties for investment rather than for sale in the ordinary course of business, it was for the Tax Court, under all of the circumstances of the case, to draw its conclusions as to whether any of such purchases by the taxpayer were for investment, or was property held for sale in the ordinary course of business. The facts, and inferences to be drawn from the facts, are for the fact finder, which, in this case, is the Tax Court. On review of the Tax Court's findings and conclusions, we cannot say that they are clearly erroneous, and that is the criterion by which an appellate court must adjudicate the case.

To like effect see *Broughton v. Commissioner, supra*, 333 F.2d 492, 495 (6th Cir. 1964).

District Judge Wilson considered each of these factors in arriving at his conclusion in the present case. His findings of fact with respect to the factors are as follows:

The determination of whether or not a taxpayer holds property primarily for sale in the ordinary course of business is essentially a question of fact. *Bauschard v. Commissioner of Internal Revenue*, 279 F.2d 115, 117 (6th Cir. 1960). The Court must consider the eight factors which are to be weighed in making that factual determination. *Mathews v. Commissioner of Internal Revenue*, 315 F.2d 101, 107 (6th Cir. 1963).

**1. and 2.—The purpose for which the property was acquired and held.** The plaintiff Francis E. Gartrell testified that he acquired and held the property as a long-term investment and as a means of supplementing his retirement income. He acknowledges, however, that he did realize gain on the property before his retirement.

**3.—Improvements, and their extent, made to the property by the taxpayer.** In 1958, 1959 and 1962 the land was surveyed and subdivided and gravel roads were constructed on the tract. No other improvements to the property were made during the period in question by any of the original holders of interests in the tract.

**4.—Frequency, number and continuity of sales.** The plaintiff sold lots in the property in accordance with the following table:

| Year | Number of Sales | Number of Lots |
|------|-----------------|----------------|
| 1956 | 0 | 0 |
| 1957 | 0 | 0 |
| 1958 | 1 | 19 |
| 1959 | 1 | 1 |
| 1960 | 3 | 7 |
| 1961 | 0 | 0 |
| 1962 | 10 | 12 |
| 1963 | 1 | 2 |
| 1964 | 1 | 1 |
| 1965 | 3 | 8 |
| 1966 | 2 | 2 |
| 1967 | 2 | 4 |
| 1968 | 1 | 2 |
| 1969 | 5 | 7 |
| 1970 | 0 | 0 |
| 1971 | 4* | 7* |

| Year | Number of Sales | Number of Lots |
|------|-----------------|----------------|
| 1972 | 4 | 6 |
| 1973 | 2** | 4** |
| 1974 | 1 | 3 |
| 1975 | 4 | 4 |

\* 6 Lots and Tract II
\*\* 3 Lots and Tract I

**5.—The nature and substantiality of the transactions.** The transactions were carried out by real estate or auction companies and as a result of personal contacts of other holders of interests in the property.

The substantiality of the transactions is illustrated by an examination of the income generated by the sale of the property as compared with the salary income of the plaintiff Francis E. Gartrell. From 1956 until his retirement in 1973, Francis E. Gartrell was a full-time employee of the Tennessee Valley Authority (TVA). His average annual income from TVA during that period was $21,361 and ranged from a low of $12,790 in 1956 to a high of $35,500 in 1973. His average annual income from the sale of the Lake Harbor Subdivision property was $1,815 and ranged from a low of zero in 1956, 1957 and 1961 to a high of $6,414 in 1972. The average ratio of his income from the Lake Harbor property to that from his TVA employment was 8.5% and ranged from a low of 0% in 1956, 1957 and 1961 to a high of 23.5% in 1962.

Moreover, the plaintiff has realized a large proportion of the gain on the property during the years since his retirement and those immediately preceding his retirement. Approximately 40% of the total income derived from the property during 1956–1976 was realized after Francis E. Gartrell's retirement in 1973. An additional 28% was realized during the years 1971–1973.

**6.—The nature and extent of the taxpayer's business.** As noted previously, the plaintiff Francis E. Gartrell was a full-time employee of TVA from 1956 until his retirement in 1973. In retirement, he is a part-time consultant with TVA. The record is silent as to Mabel L. Gartrell's occupation. The plaintiffs purchased no real estate (other than a principal residence) for sale during the period 1956 to 1973. The plaintiff Francis E. Gartrell did maintain records of the sales of the Lake Harbor Subdivision Property.

**7.—The extent of advertising to promote sales or the lack of such advertising.** The plaintiff Francis E. Gartrell placed advertisements in connection with the 1958 auction sale in eight East Tennessee newspapers and on one Chattanooga, Tennessee radio station. Other newspaper advertisements were placed in 1960, 1962 and 1964 and in 1961 a sign was placed on the property identifying it as property for sale. No other advertising activities were engaged in by the plaintiffs.

**8.—Listing of the property for sale directly or through brokers.** The plaintiffs engaged as agents for the sale of the property some four individuals or real estate agencies.

It is the opinion of the Court that the facts in the present case do not support the conclusion that the Lake Harbor Subdivision property was held by the plaintiffs "primarily for sale to customers in the ordinary course of [their] trade or business" within the meaning of that phrase in 26 U.S.C. §§ 1221 and 1237. It is the opinion of the Court, therefore, that the gain realized by the plaintiffs from the sale of the property that is the subject of this lawsuit should have been treated as capital gain for the purpose of computing federal income taxes. Accordingly the District Director of Internal Revenue in Memphis, Tennessee acted in error and illegally by assessing an adjustment to the plaintiffs' taxes for the year 1973 in so far as that adjustment was made after a computation of the plaintiffs' tax liability on the sale of part of the property in question at ordinary income rates. (Footnote omitted).

The Government contends that the District Judge "merely paid . . . lip service" to the factors enumerated in *Mathews, supra,* "or perhaps misinterpreted

them." To the contrary, we conclude that the district court correctly interpreted and applied the *Mathews* factors in the present case.[3]

On the record before us, this court cannot hold that the foregoing findings of fact by the district judge are clearly erroneous. To the contrary, we conclude that they are supported by substantial evidence and must be affirmed.

## IV

█ In August 1958, the taxpayers and their co-owners of the land here in question established a revocable trust, naming themselves as beneficiaries. E. Wayne Gilley, one of the co-owners, was named as trustee. The trust instrument recited that Gilley and his wife owned a one-half interest, the taxpayers a one-fourth interest and Georgia P. Hollis a one-fourth interest.

The purpose was stated as follows:

**Whereas.** Beneficiaries have this day conveyed in trust to the Trustee the above-described land with full power and right of disposition as enumerated therein to simplify real estate transactions involving the property described and to eliminate the necessity and relieve all the parties hereto, except E. Wayne Gilley, individually and as trustee from executing various documents required in such real estate transactions.

The Government contends that the trust instrument supports its position that the intention and purpose of taxpayers was to hold the property for sale in the ordinary course of business. Emphasis is placed upon the fact that the district judge did not mention the trust in his findings of fact. The taxpayers assert that the trust was established after their experience with the auction sale of 1958, when it was necessary for each of the co-owners to sign the deeds to all the nineteen tracts sold; that the purpose of the trust was to authorize the trustee to sign deeds and any other necessary instruments without the necessity of multiple signatures; and that the trust had no effect whatsoever on the tax status of the owners or the issue of whether the taxpayers held the property primarily for sale to customers in the ordinary course of their trade or business. Presumably this was the conclusion of the district judge, who did not mention the trust in his opinion, even though the trust instrument is a part of the record, was attached as an exhibit to the answers filed by taxpayers to the Government's interrogatories, was submitted by the Government in support of a motion for summary judgment, and was a topic of oral argument by the attorneys.

We conclude that the language of the trust instrument does not support the Government's contention that the grantors were engaged in business through a trust.

The provisions of a "grantor" trust may be such that it does not affect the tax status of the grantor. *Cf. Helvering v. Clifford*, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788 (1940); *Acuff v. Commissioner*, 296 F.2d 725 (6th Cir. 1961). The trust instrument in the present case, by its language, did not express an intention to create a separate entity for tax purposes. It simply authorized one of the co-owners of the real estate, in his capacity as trustee, to execute deeds and other documents on behalf of all the grantors, who in turn received their respective shares of net proceeds of sales as if no trust had been created.

The Government, in the alternative, urges that the decision of the district court be vacated and the case be remanded for further exploration of the issue concerning the trust. We conclude that the language of the trust instrument speaks for itself and that the tax status of the beneficiaries remained the same as if no trust had ever been created.

The suggestion for a remand is denied and the judgment of the district court is affirmed.

---

**3.** As author of the Sixth Circuit opinion in *Broughton v. Commissioner, supra*, 333 F.2d 492 (6th Cir. 1964), sitting as a visiting judge, Judge Wilson demonstrated comprehensive familiarity with this area of the law of federal income taxation.