46 F.3d 1132
 75 A.F.T.R.2d 95-1130, 95-1 USTC P 50,076
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Zane R. TOLLIS; Estate of Virjean Tollis, Deceased, Zane R.
Tollis, Executor; and Zanco, Inc., Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 Nos. 93-2198 to 93-2200.
 United States Court of Appeals, Sixth Circuit.
 Jan. 23, 1995.
 
 Before: MILBURN, BOGGS, and NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Zane R. Tollis[1] and Zanco, Inc., appeal the Tax Court's denial of their petitions for a redetermination of a tax deficiency. Tollis disputes the IRS's determination that he should have classified the proceeds from the sale of real property as ordinary income, not capital gains. Tollis also challenges the assessment of negligence penalties for failing to report the proceeds of certain real property sales. Zanco challenges the assessment of negligence penalties for overstating deductions. For the reasons set out below, we affirm.
 
 
 2
 * On June 21, 1990, the IRS issued a notice of deficiency to Tollis regarding his 1987 tax return. On September 24, 1990, the IRS issued two additional notices of deficiency. The first was to Tollis for his 1977 and 1980-1984 tax returns. The IRS directed the second notice to Tollis's wholly owned company, Zanco. This notice asserted a deficiency for the 1981 tax year. The alleged deficiencies stem from Tollis's business as a real estate developer.
 
 
 3
 In 1958, Tollis purchased approximately sixty-nine acres of land in Broadview Heights, Ohio. His aim was to build residential housing for sale to the public. After subdividing the parcel and building a road through it, Tollis built condominium and apartment complexes.
 
 
 4
 In 1979, Tollis decided to retire. He gave his property management concern to his son, and, when his son expressed no interest in developing the land, sought buyers for the remaining undeveloped property. In January 1980, Tollis negotiated an option contract to sell the remaining land.
 
 
 5
 In 1983, after purchasing three of the nine parcels from Tollis, the buyer cancelled the option contract. Tollis reacquired the three parcels and began seeking new buyers. Tollis also developed some of these parcels. In 1987, Tollis was able to sell Parcel T, undeveloped, to another company.
 
 
 6
 These transactions are the basis of the first dispute, the status of the land as a capital asset. The IRS claims that Tollis should have reported the proceeds from these and another sale as ordinary income, not capital gains. To summarize, the transactions in question are:
 
 
 7
 1. The sale of Parcel Q in exchange for a promissory note in 1977.
 
 
 8
 2. The sale of Parcel Z for $400,000 in 1980.
 
 
 9
 3. The sale of Parcel V for $400,000 in 1981.
 
 
 10
 4. The sale of Parcel U for $400,000 in 1982.
 
 
 11
 5. The sale of Parcel T for $240,000 in 1987.
 
 
 12
 The second issue involves the IRS's assessment of negligence penalties against Tollis and Zanco. The IRS cited Tollis for failing to report, as either ordinary income or capital gain, the proceeds from the sales of Parcels Q and Z (Transactions 1 & 2 above) and from the sale, in 1982, of parcel 374-01-022.[2] The IRS cited Zanco for overstating deductions for wages and legal fees.
 
 II
 
 13
 Whether a taxpayer holds property primarily for sale to customers in the ordinary course of the taxpayer's business is a question of fact. Gartrell v. United States, 619 F.2d 1150, 1152-53 (6th Cir.1980). This court reviews a decision of the Tax Court "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." 26 U.S.C. Sec. 7482. Therefore, we will reverse the Tax Court only when its factual findings are clearly erroneous. See Fed.R.Civ.P. 52(a). A finding is clearly erroneous when "although there is evidence to support [the finding], the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985).
 
 
 14
 The law presumes that property held by a taxpayer is a capital asset and therefore subject to capital gains treatment when sold. Section 1221 of the Internal Revenue Code, however, reserves ordinary income treatment for property that is "stock in trade of the taxpayer, ... or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." The Supreme Court has held that it is appropriate to construe narrowly the definition of capital asset, while simultaneously construing broadly the Code's definition of exclusions from capital asset status. Commissioner v. Gillette Motor Transport, Inc., 364 U.S. 130, 134-35 (1960). See also Gartrell, 619 F.2d at 1153. Furthermore, the taxpayer bears the burden of proving that the classification of proceeds as ordinary income is erroneous. Welch v. Helvering, 290 U.S. 111 (1933). See also Gartrell, 619 F.2d at 1153-54.
 
 
 15
 In Mathews v. Commissioner, 315 F.2d 101 (6th Cir.1963), we described eight factors to be examined in determining how a person holds property:
 
 
 16
 [n]o single factor or test is dispositive. Among the factors considered are: (1) the purpose for which the taxpayer acquired the property; (2) the purpose for which it was held; (3) improvements and their extent, made to the property by the taxpayer; (4) frequency, number and continuity of sales; (5) the extent and substantiality of the transactions; (6) the nature and extent of the taxpayer's business; (7) the extent of advertising to promote sales, or the lack of advertising; and (8) listing the property for sale directly or through brokers.
 
 
 17
 Mathews, 315 F.2d at 107. See also Broughton v. Commissioner, 333 F.2d 492, 495 (6th Cir.1964).[3] Tollis argues that, while he is a real estate developer, he has never sold undeveloped land before. Therefore, these sales were not in the ordinary course of his business. However, this reasoning is unpersuasive.
 
 
 18
 We agree with those circuits that have held that there must be some "separation" between developed and undeveloped parcels before the undeveloped portion will be considered a capital asset. "Although a taxpayer may be able to establish that certain parcels were held primarily for investment while others were held for development, there is a heavy burden on him to establish the segregation of the parcels." Graves v. Commissioner, 867 F.2d 199, 203 (4th Cir.1989). See also Slappey Drive Indus. Park v. United States, 561 F.2d 572, 587 (5th Cir.1977). In particular, the court in Graves noted that "[t]he mere lack of development activity does not sufficiently separate one parcel from the others...." Graves, 867 F.2d at 203.
 
 
 19
 The reasoning employed by Tollis would, in many circumstances, give a business a "free pass" the first time it did something new. Therefore, the fact that he had never sold undeveloped land before, standing alone, is insufficient. Instead, this is another piece of evidence to be examined by the Tax Court. In some circumstances, a party who has never sold undeveloped land may be able to carry its burden to prove that, when it did do so, it was not in the ordinary course of business. Similarly, a party who always sold undeveloped land may be able to carry its burden by showing that it held certain undeveloped parcels separately for investment purposes.
 
 
 20
 We must then look at the record for evidence that Tollis separated these parcels from those he developed. In Philhall, we held that "[p]ublic policy and the prevention of fraud require that when the intent of the party is crucial to determining the tax consequences of a transaction, the taxpayer's statements as to his intent should not, by themselves, be enough to justify a jury verdict in his favor when there is contrary objective evidence." Philhall, 546 F.2d at 215. Tollis purchased the land intending to develop it. He developed portions of it over the course of two decades. Tollis made some improvements to the land; he held the land with the intent to develop it; and, finally, after his deal fell through, he did develop several parcels.[4]
 
 
 21
 To rebut the inference created by these facts, "[c]ontemporaneous facts, not self-serving testimony given years later, [are] important in establishing intent." Id. Contemporaneous evidence includes items such as "book entries, to corroborate the claim that there was a change in the purpose for which the property was held and to indicate the time when such a change might have taken place." Herzog Bldg. Corp. v. Commissioner, 44 T.C. 694, 704 (1965). The absence of any objective, contemporaneous facts showing a change of intent leads us to conclude that the Tax Court was not clearly erroneous in finding in favor of the IRS.
 
 III
 
 22
 Tollis disputes the assessment of negligence penalties for failing to report, as either ordinary income or capital gain, the proceeds from the sales of Parcels Q, Z, and 374-01-022. We review the Tax Court's decision to affirm the IRS's assessment of negligence penalties for clear error. Illes v. Commissioner, 982 F.2d 163, 166 (6th Cir.1992), cert. denied, 113 S.Ct. 1579 (1993).
 
 
 23
 Specifically, Tollis asserts that he relied in good faith on the advice of his accountant. The taxpayer bears the burden of proving the inaccuracy is not the result of negligence and therefore does not warrant assessment of a penalty. See Illes, 982 F.2d at 166; Leuhsler v. Commissioner, 963 F.2d 907, 910 (6th Cir.1992). In certain circumstances, reliance on the advice of an accountant can be a defense. United States v. Boyle, 469 U.S. 241, 251 (1985); Jaques v. Commissioner, 935 F.2d 104 (6th Cir.1991). However, the taxpayer bears the ultimate responsibility for the accuracy of his return. Boyle, 469 U.S. at 251. Where the statute requires no special training or effort to apply, good faith reliance on the advice of an accountant is not a defense. Id. at 252 (ascertaining and meeting a deadline for filing an estate tax return requires no special training or effort).
 
 
 24
 The Internal Revenue Code states (in part) "gross income means all income from whatever source derived, including (but not limited to) ... [g]ross income derived from business ... [and] [g]ains derived from dealings in property." I.R.C. Sec. 61(a). Tollis argues that the terms "gain" and "income" often differ and require expertise to understand fully and apply accurately. However, this would be the issue if Tollis had mischaracterized the proceeds as either ordinary income or capital gain when reporting it. In fact, Tollis never reported the proceeds from these transactions. Therefore, the issue centers on the word "all," a word that requires no special training to understand.
 
 
 25
 Tollis is a developer of real estate with thirty years of experience. He has previously filed returns in which the management or disposition of real property provided a part of his income. Furthermore, Tollis admitted that he never read the return before signing it. In this context the Tax Court's opinion is not clearly erroneous.
 
 
 26
 Zanco disputes negligence penalties assessed for overstating deductions for wages and legal fees. The Tax Court held Zanco liable because it "offered no evidence to show whether Zanco claimed these deductions because it failed to carefully examine its income tax returns or because it relied on the erroneous tax advice of its accountant. In fact, the record does not even show whether Zanco actually incurred these expenses." Nothing has changed in the record since the Tax Court's statement. Zanco provides no discussion or factual background for arguing that it should not be liable for negligence penalties. Therefore, the Tax Court's decision regarding the negligence penalties assessed against Zanco is not clearly erroneous.
 
 IV
 
 27
 The judgment of the Tax Court is therefore AFFIRMED.
 
 
 
 [1]
 Throughout this opinion "Tollis" refers to Zane R. Tollis individually and as executor of the estate of Virjean Tollis
 
 
 [2]
 Parcel 374-01-022 is not related to the "capital asset" dispute discussed previously
 
 
 [3]
 The Tax Court correctly noted that it need not discuss or comment on each aspect of the test. This is consistent with our holding in Philhall Corp. v. United States, 546 F.2d 210, 215 (6th Cir.1976), that "[t]hese factors are not to be considered mechanically, but with a view to determining the intent of the taxpayer."
 
 
 [4]
 Tollis argues that his decision to retire in 1979 changed the status of the property. There is no per se rule that retirement changes the status of property held by a taxpayer. This is merely another factor to be considered by the court. While such a factor may be very persuasive, where, as here, there is no objective evidence supporting a change of intent, it was not clearly erroneous for the Tax Court to disregard it. See, e.g., Grace Bros., Inc. v. Commissioner, 10 T.C. 158 (1948), aff'd, 173 F.2d 170 (9th Cir.1949), (decision to leave the wine business did not transform the stock of bottled wine into a capital asset); Estate of Ferber v. Commissioner, 22 T.C. 261 (1954) (death of a furrier did not transform his stock of unused pelts into capital assets)