Jack **OMER** and Blanche Omer, Plaintiffs-Appellants,

v.

**UNITED STATES** of America, Defendant-Appellee.

No. 15423.

United States Court of Appeals Sixth Circuit.

March 30, 1964.

Marshall P. Eldred, Louisville, Ky., Brown & Eldred, Louisville, Ky., of counsel, for appellants.

Crombie J. D. Garrett, Department of Justice, Washington, D. C., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Attorneys, Department of Justice, Washington, D. C., on brief; William E. Scent, U. S. Atty., Louisville, Ky., of counsel, for appellee.

Before O'SULLIVAN and PHILLIPS, Circuit Judges, and McALLISTER, Senior Circuit Judge.

PHILLIPS, Circuit Judge.

This appeal involves the single question of whether certain coal royalties received by appellants are entitled to capital gain treatment under Section 631(c) of the Internal Revenue Code of 1954, 26 U.S.C. § 631(c).

Appellants are engaged generally in the business of farming in Webster County, Kentucky. All the coal underlying their farm was conveyed to a coal company in 1905 by a predecessor in title, thereby severing ownership of the minerals from ownership of the surface.

On May 21, 1956, appellants executed a five year written lease to Russell Badgett, Jr. lessee, providing that "if the lessee secures the right to mine and remove said coal" from the owners thereof, the lessee was granted the right to use the surface of said lands and the strata overlying the coal for the purpose of mining and removing such coal by the strip or open cut method. Under the terms of this lease appellants were to be paid twelve cents for each ton of coal mined and sold from the leased premises.

On or about November 1, 1957, the lessee began the stripping of appellants' land and the mining and removal of coal. Appellants received royalties in the

amounts of $3,600.00 for 1957, $29,854.00 for 1958 and $30,985.46 for 1959. These royalties were reported on appellants' joint income tax returns for the years in question as capital gains, upon the theory that such royalties were entitled to capital gain treatment under the statute hereinafter quoted.

Deficiencies were assessed on the ground that the royalties received by appellants were not entitled to capital gain treatment but constituted ordinary income. Appellants paid the deficiencies plus penalties and interest, and filed a claim for refund, which was denied. This suit was then filed for recovery pursuant to 28 U.S.C. § 1346(a).

The District Judge, the Honorable Henry L. Brooks, ruled that the amounts received by appellants under said lease constituted rents and royalties taxable as ordinary income, rather than receipts from the "disposal of coal" within the meaning of the statute in question, and therefore such royalties were not entitled to capital gain treatment. A motion for partial summary judgment was granted to that effect.

Appellants' claim to capital gain treatment on the royalties they received from Badgett is based upon Section 631(c) of the Internal Revenue Code of 1954, 26 U.S.C. § 631(c), which is set forth in the margin.[1] By its express terms this statute provides for capital gain treatment only in case of "the disposal of coal" as therein set forth. The District Judge concluded that there was no "disposal of coal" under the lease between appellants and Badgett. Whether or not this

holding is correct is the question to be determined on this appeal.

It is undisputed that appellants owned only the surface of the land at the time of the execution of the lease and the collection of the royalties. The coal long since had been severed from the surface by deed of their predecessor in title in 1905. The lease expressly recites that "Lessors do not own the coal in and underlying the leased premises and grant no rights to same." Before the lessee could proceed to strip mine the surface of the land owned by appellants, it was necessary for him to acquire the coal from third parties, who were owners thereof by virtue of the 1905 deed and perhaps subsequent conveyances. The lease from appellants to Badgett was expressly conditioned upon Badgett being successful in purchasing said coal from the third party owners.

Appellants urge that they were the owners of an "economic interest" in the coal in place because of the fact that the coal could not be mined except by the strip method and therefore could not be removed except with their consent as owners of the surface. The District Judge made an express finding of fact that all of the coal underlying appellants' farm which was removed by Badgett could only have been removed by the strip mining method. Evidence was introduced to the effect that the coal company which was grantee under the 1905 deed executed by appellants' predecessor in title thereafter removed all the coal that could be mined by the underground method and then abandoned the mines. Appellants contend that the 1905 con-

[1]. "(c) Disposal of coal with a retained economic interest.—In the case of the disposal of coal (including lignite), held for more than 6 months before such disposal, by the owner thereof under any form of contract by virtue of which such owner retains an economic interest in such coal, the difference between the amount realized from the disposal of such coal and the adjusted depletion basis thereof plus the deductions disallowed for the taxable year under section 272 shall be considered as though it were a gain or loss, as the case may be, on the sale of such coal. Such owner shall not be entitled to the allowance for percentage depletion provided in section 613 with respect to such coal. This subsection shall not apply to income realized by any owner as a coadventurer, partner, or principal in the mining of such coal, and the word "owner" means any person who owns an economic interest in coal in place, including a sublessor. The date of disposal of such coal shall be deemed to be the date such coal is mined."

veyance contemplated and authorized removal of coal only by the underground method of mining and that there was no strip mining of coal in that section of Kentucky as early as 1905. Since the remainder of the coal underlying their farm could not be removed except by strip mining, and even though they were not owners of any of such coal, appellants contend that they owned an "economic interest" in the coal in place under these circumstances. By leasing the surface to Badgett, they say that they disposed of their economic interest in the coal and therefore the transaction is entitled to capital gain treatment under the terms of the foregoing statute.

■■ This contention is contradicted by the terms of the lease agreement. This instrument does not purport to convey any "economic interest" in coal to Badgett, but merely grants the right to use the surface and overlying strata for strip mining. The instrument by its provisions not only does not convey any economic interest in coal, but, to the contrary, expressly disclaims ownership of the coal, recognizing that Badgett must purchase the coal from the third party owners thereof before he can begin strip mining operations. The appellants owned no right in relation to the coal other than to demand compensation for use of the surface. This was the sole purpose and effect of the lease. Any economic interest that appellants may have had in the coal came into being as a result of the execution of the lease, and clearly did not exist prior thereto.

Appellants rely upon Commissioner of Internal Revenue v. Southwest Exploration Co., 350 U.S. 308, 76 S.Ct. 395, 100 L.Ed. 347. We do not construe this decision to mean that all contributions to mining result in the acquisition of an economic interest in the minerals in place, Parsons v. Smith, 359 U.S. 215, 79 S.Ct. 656, 3 L.Ed.2d 747, and we hold this case not to be controlling. More nearly in point is the reasoning in Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L. Ed. 199, holding that payments received by the lessor from an oil and gas lease were not entitled to capital gain treatment, but were taxable as ordinary income.

Further, the Southwest Exploration Co. case involved the statutory depletion allowance as applied to owners of upland sites used in slant drilling for off-shore oil deposits, and did not present the question of capital gain treatment as against taxation as ordinary income. In the instant case the District Court granted appellants a recovery in the amount of $2,590.36, plus statutory interest, based upon depletion allowance.[2]

As stated by this Court in United States v. Brown Wood Preserving Company, 275 F.2d 525, 529 (C.A.6): "Capital gains is an exception to the general rule that income is taxable as ordinary income. * * * Accordingly, the statute is not to be broadly applied but is narrowly construed in order to protect the revenue."

We hold that appellants did not own the coal in issue or any economic interest therein at the time of the execution of the lease to Badgett, and under the terms of said lease made no "disposal of coal" within the meaning of the statute.

The judgment of the District Court is affirmed.

2. The brief of appellee contains the following explanation of this allowance: "Because of the apparent hardship to the taxpayers in view of the probable destruction of their land by the strip-mining operation and because Southwest Expl. Co. may possibly justify a conclusion that the taxpayers *acquired* an economic interest in the coal in place in the transaction with Badgett, the Commissioner conceded in the District Court that the taxpayers are entitled to a depletion allowance. That concession has been taken into account in the judgment."