**Sue T. NEWTON, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. CV82–PT–1999–J.**

United States District Court, N.D. Alabama, Jasper Division.

Feb. 8, 1984.

Charles E. Tweedy, Jr., Tweedy, Jackson, & Beech, Jasper, Ala., for plaintiff.

Frank W. Donaldson, U.S. Atty., Caryl Privett, Asst. U.S. Atty., Birmingham, Ala., Victoria J. Sherlock, Attorney, Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

PROPST, District Judge.

This case comes to be heard on stipulated facts.

This is a suit for the refund of federal taxes paid by the plaintiff for the year 1977, in the amount of $14,378.00. In that year, the plaintiff reported $105,615.47 as ordinary income on her federal income tax return representing net coal royalties. Plaintiff brought this action seeking to recharacterize the coal related income as capital gain.

Plaintiff was the owner of the surface and the surface rights of certain real property in Walker County, Alabama during 1977 and for some time prior to that. The mineral rights had been previously conveyed to an unrelated third party and were transferred to Charles Bishop prior to 1977. On March 21, 1977, the plaintiff and Charles Bishop entered into a lease agreement, giving Charles Bishop as lessee the right to prospect and mine by the stripping method on the plaintiff's property for five years. Paragraph 5 of the lease states that "[l]essor does not warrant what, if any title, she has to said lands, but is leasing whatever right, title and interest she has in said lands." Pursuant to this lease agreement the plaintiff received coal royalties paid on the basis of $1.00 per ton or 5% of the sales price (whichever is greater) of merchantable coal mined and removed from the subject tract. The lease also provided for an advance royalty of $15,000.00 and a minimum royalty of $400.00 per month during periods when no mining activity was conducted.

The sole issue presented in this case is whether the plaintiff was entitled to report the coal-related income as capital gain under the provisions of 26 U.S.C. § 631 of the Internal Revenue Code of 1954. Section 631(c) authorizes capital gain treatment only "(i)n the case of the disposal of coal (including lignite), held for six months before such disposal, by the owner thereof under any form of contract by virtue of which such owner retains an economic interest in such coal. . . ." The term "owner" is defined by the statute as "any person who owns an economic interest in coal or iron ore in place, including a sublessor." Thus, to qualify for capital gains treatment

under § 631(c) the plaintiff must have owned an economic interest in the coal *prior* to the lease agreement of March 29, 1977 and retained an interest in the coal after the lease agreement. As stated in Treasury Regulation § 1.631–3(b)(4), "(a) person who merely acquires an economic interest and has not disposed of coal or iron ore under a contract retaining an economic interest does not qualify under section 631(c)." (Emphasis added.) If the plaintiff has merely acquired an economic interest under the terms of the lease, she may be entitled to a percentage depletion deduction, *see Winters Coal Co., Inc. v. Commissioner*, 496 F.2d 995 (5th Cir.1974), but not to capital gain treatment on the royalty income. *See Omer v. United States*, 329 F.2d 393, 395 (6th Cir.1964); *Commissioner v. Southwest Exploration Company*, 350 U.S. 308, 76 S.Ct. 395, 100 L.Ed. 347 (1956).

■ The purpose of section 631(c) and its predecessor under the Internal Revenue Code of 1939 is to permit capital gain treatment in a situation where royalties on coal mining retained by the entire fee simple owner or owner of an economic interest in the coal in place would otherwise be taxed as ordinary income subject to a percentage depletion deduction. S.Rep. No. 627, 78th Cong., 1st Sess., pp. 25–26 (1944); H.Rep. No. 586, 82nd Cong., 1st Sess., pp. 31–32 (1952); H.Rep. No. 1337, 83rd Cong., 2d Sess., pp. A189–A191 (1954), U.S.Code Cong. & Admin.News 1954, p. 4017. Because section 631 is an exception to the general rule treating royalty income as ordinary income, *see* 26 U.S.C. § 61 (1954), its terms must be narrowly construed. *Corn Products Refining Co. v. Commissioner*, 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29 (1955); *Gartrell v. United States*, 619 F.2d

1150 (6th Cir.1980); *United States v. Frazell*, 335 F.2d 487 (5th Cir.1964).

The interests of surface owners in the underlying minerals for purposes of capital gain treatment has been considered by the Sixth Circuit in *Omer v. United States*, 329 F.2d 393 (6th Cir.1964), and *Martin v. United States*, 409 F.2d 13 (6th Cir.1969). The facts of the *Omer* case are almost identical to those of the case at bar.[1] The taxpayers were owners of the surface rights of the subject lands, the mineral rights having been conveyed away much earlier. 329 F.2d at 393. The taxpayers leased the rights to use the surface of the lands for five years in return for coal royalties and then sought to receive capital gain treatment on the coal royalties. *Id.* at 393–94. Despite the taxpayers' argument that they had conveyed an economic interest in the lease, the court found that the lease merely granted the lessee the right to use the surface, and that any economic interest the taxpayers may have had in the coal was created by the lease and did not exist previously. *Id.* at 395. Therefore, the court found that the taxpayers were not entitled to capital gain treatment. *Id.* In *Martin v. United States*, 409 F.2d 13 (6th Cir. 1969), a taxpayer seeking capital gain treatment under section 631(c) owned an undivided fractional interest in the minerals in addition to the surface rights of the subject real estate. The court held that the amounts paid to the taxpayer, pursuant to the lease for the use of the surface, were not to be treated as gain from the sale of a capital asset, relying on the *Omer* decision.

■ This court finds the conclusion of the Sixth Circuit in *Omer v. United States* and *Martin v. United States* determinative of the issue presented in the case at bar. The lease between the plaintiff and Charles

---

1. The court is not persuaded by plaintiff's conclusory argument that differences in Alabama and Kentucky law make the cases distinguishable. *See Vest v. C.I.R.*, 481 F.2d 238, 242 (5th Cir.1973). The mere fact that plaintiff could require the mineral owner to deal with her does not create an interest in the coal. The court need not address what the situation would be if plaintiff had sold her surface rights at an inflat-

ed price. Presumably, she would have been entitled to capital gains treatment on the excess over her basis. Bishop might then have had a capital investment rather than deductible "royalties." Another situation *might* also be presented if plaintiff had sold the right to strip mine for a set price rather than having geared it to the amount of coal mined.

Bishop, does not propose to convey an "economic interest" in the coal, but conveys only whatever interest the plaintiff had to convey, here stipulated by the parties to be the surface ownership and all rights attached thereto. There is no support for the plaintiff's proposition that ownership of the surface and accompanying rights, without more, gives the plaintiff an economic interest in the minerals beneath the surface. Although the rights of a mineral owner are subservient to the rights of a surface owner under Alabama law, *see Bibby v. Bunch,* 176 Ala. 585, 58 So. 916 (1912), who must give his consent before the mineral owner can mine coal by the stripping method; this does not imply that the surface owner possesses any rights in the minerals themselves. *See Omer v. United States, supra.*

The cases cited by the plaintiff, *Winters Coal Co., Inc. v. Commissioner,* 496 F.2d 995 (5th Cir.1974), and *Commissioner v. Southwest Exploration Co.,* 350 U.S. 308, 76 S.Ct. 395, 100 L.Ed. 347 (1956), in support of his claim to possession of a prior economic interest deal with percentage depletion deduction, rather than capital gain treatment under section 631(c), and are not controlling. Unlike section 631(c), section 611 of the Internal Revenue Code of 1954, allows a percentage depletion deduction for mineral royalties if the taxpayer has *acquired* an economic interest in the minerals and does not require an economic interest in the minerals *prior* to a disposal of part of that interest, as does section 631(c). Thus, it is not inconsistent, as the plaintiff suggests, to refuse capital gain treatment for coal royalties, while permitting a percentage depletion deduction.

Because the plaintiff had no economic interest in the coal prior to the lease agreement with Charles Bishop, she cannot receive capital gains treatment for the coal royalty income under section 631(c). The court need not determine whether the plaintiff later acquired an economic interest in the coal through the lease agreement; however, as the Commissioner has allowed the plaintiff a percentage depletion deduction for the coal royalties, it may be reasonably argued that the plaintiff did

acquire an economic interest in the coal under the lease agreement in return for her surrender of the surface rights.

A judgment for the defendant will be entered contemporaneously herewith.