John Nadalin and Mary Nadalin v. Commissioner.
Nadalin v. Commissioner
Docket No. 84359.
United States Tax Court
T.C. Memo 1967-10; 1967 Tax Ct. Memo LEXIS 251; 26 T.C.M. (CCH) 73; T.C.M. (RIA) 67010; January 25, 1967
*251 Petitioner subdivided property acquired in 1955 and prior years and sold lots in the subdivision, under an arrangement with a realtor, in the years 1956, 1957, and subsequent years. The Court of Claims held that the gain realized by petitioner on the sale of lots in this subdivision in 1956 was taxable as ordinary income. Nadalin v. United States, 364 F. 2d 431. This case, involving the year 1957, was submitted to this Court on the record made in the Court of Claims. Held, the lots in the subdivision sold by petitioner in 1957 were property held by petitioner primarily for sale to customers in the ordinary course of his trade or business and the gain realized thereon is taxable as ordinary income. Roger K. Powell, 738 Huntington Bank Bldg., Columbus, Ohio, for the petitioners. Rodney G. Haworth, for the *252 respondent. DRENNEN
Memorandum Opinion DRENNEN, Judge: Respondent determined a deficiency in petitioners' income tax for the taxable year 1957 in the amount of $25,015.53. The only issue for decision is whether petitioners realized ordinary income or capital gain from the sale of lots in a subdivision in Upper Arlington, Ohio, known as Windsor Place Addition Extension No. 1, in 1957. In his notice of deficiency respondent adjusted the basis for computing gain and loss on the lots sold but petitioners are not contesting these adjustments. Petitioners were husband and wife residing in Columbus, Ohio, in 1957. They filed a joint Federal income tax return for the year 1957 with the district director of internal revenue at Columbus, Ohio. Petitioner Mary Nadalin is a petitioner solely because a joint Federal income tax return for the taxable year 1957 was filed. Hereafter, John Nadalin will be referred to as petitioner. For the taxable year 1956, respondent determined a deficiency in petitioner's income tax on the grounds that certain lots sold by petitioner in 1956 from the same subdivision here involved were property held by petitioner primarily for sale to customers *253 in the ordinary course of his trade or business, and the profit realized thereon was taxable as ordinary income rather than capital gain as reported by petitioner. Petitioner disagreed with this determination, paid the resulting deficiency, and sued for refund in the United States Court of Claims, docket No. 344-60. A hearing by a commissioner of the Court of Claims followed. This proceeding was called for trial before the 1956 case was decided by the Court of Claims. This case was submitted on a stipulation of facts. The parties stipulated that the parties involved in this proceeding are identical to those in the Court of Claims case, docket No. 344-60, and that docket No. 344-60 involved petitioner's taxable year 1956 and his sale of lots in that year from the same tracts of real estate involved in this proceeding. They also submitted as joint exhibits in this proceeding a copy of the transcript of testimony taken in docket No. 344-60, copies of all the exhibits submitted in that case, and stipulated that if the witnesses who testified before the Court of Claims in docket No. 344-60 were to testify in the present proceeding, they would give the same responses as were given in the *254 Court of Claims, and their responses would be equally applicable with respect to the taxable period involved in this proceeding. No additional evidence was offered by either party in this proceeding and this case was thus submitted to this Court on the record made in the Court of Claims in docket No. 344-60. Under date of March 25, 1965, the commissioner submitted his report and opinion to the Court of Claims in which he concluded that petitioner had held for sale to customers in the ordinary course of his trade or business the lots which he sold in 1956 from the subdivision with which we are presently concerned for the taxable year 1957, and recommended that plaintiff's (petitioner's) petition be dismissed. Under date of July 15, 1966, the Court of Claims, in a per curiam opinion, Nadalin v. United States, 364 F. 2d 431, adopted the opinion, findings, and recommendation of the commissioner, and, on the same day, entered an order dismissing the petition. We are advised that no appeal has been taken from that decision of the Court of Claims and that the time for appeal has expired. Respondent contends on brief that we are bound by the principle of stare decisis and *255 consistency to conclude as did the Court of Claims that petitioner held the lots in his subdivision primarily for sale to customers in the ordinary course of his trade or business, and that gains from the sale of the lots in 1957 constituted ordinary income, as they did - by virtue of the findings of the Court of Claims - in 1956. Respondent has not pleaded that collateral estoppel is to be applied by us to reach our conclusion. Petitioner has filed no brief. We have considered with care the evidence which the parties have stipulated comprises the record in this case. We have reached our conclusions herein by an independent review of the evidence submitted in the proceeding before the Court of Claims, which related to petitioner's business activities generally and his activities with respect to the particular property here involved not only during the year 1956, which was before that Court, and the year 1957, which is before this Court, but for years preceding and following those years as well. We have found it unnecessary to consider the applicability of the doctrine of stare decisis, argued by respondent, in reaching our conclusion herein. Based on our own review of the record, *256 we agree with the facts as found by the Court of Claims, which are set forth in considerable detail in the report of Commissioner Gamer to the Court of Claims, and which are related in more summary form in the opinion of the Court of Claims, Nadalin v. United States, supra. It would serve no useful purpose to repeat those facts herein. We adopt as our findings of fact the facts as found by the Court of Claims in the report and opinion referred to above and incorporate them herein by this reference. A very brief summary of those facts is as follows. Petitioner, a general contractor, owned about 11 acres of land in Upper Arlington, Ohio, 5 acres of which he had acquired in 1943 and the adjoining 6 acres of which he had acquired in 1944. In 1954 petitioner agreed to buy an additional 22 acres of land lying to the north and adjacent to his 11-acre tract from Spires, and the contract of sale was executed in April of 1955. In 1954 petitioner wished to ascertain whether his 11-acre tract, only a small part of which had sewer connections, could be profitably subdivided. In October and November of 1954 he appeared before the Planning Commission of Upper Arlington, and submitted a preliminary *257 sketch prepared by an engineer showing the area to be subdivided, the division into lots, the layout of streets, and their tie-in to streets in the adjacent area. This sketch also showed the proposed subdivision of property adjoining the 11-acre tract, including the 22-acre Spires' tract, as was necessary to obtain preliminary approval of his proposed development. In late 1954 or early 1955 the City of Upper Arlington acquired land for a new high school in the vicinity of petitioner's property, and also adopted a resolution for the construction of a sewer line that would effectively serve both the 11-acre and the 22-acre tracts. Immediately after the Spires' contract was executed petitioner employed an engineering firm to prepare a preliminary subdivision map of the entire 33 acres. Two subdivisions were platted, i.e., "Windsor Place Addition," which consisted of six lots on the western end of the 11-acre tract which already had sewage facilities available, and "Winsdor Place Addition Extension No. 1," consisting of the remainder of the 11 acres, the 22-acre Spires' tract, and several adjoining lots acquired from a neighbor in a trade. After preliminary approval of the plat by the *258 Planning Commission on June 6, 1955, petitioner authorized the engineering firm to proceed with final plats for the two subdivisions, both of which were finally approved. In April of 1956, after final approval of the Winsdor Place Addition was obtained, petitioner conveyed these six lots to the Northwestern Development Company pursuant to an option previously given. In May or June of 1955 petitioner was approached by J. Newton Jones, a realtor, who wanted to work out arrangements with petitioner to develop and market the lots in the second addition. After extended negotiations an agreement was worked out between petitioner and Jones whereby Jones was given an option to purchase the lots in Extension No. 1 Subdivision. Because Jones had no capital to develop the property, the arrangement was that Jones was to interest contractors in buliding houses on the lots and furnishing the capital to buy the lots and develop the property. As it worked out, petitioner would transfer lots to Jones, as requested by Jones, for a sales price of $55 per front foot, payable $500 down and the balance payable when the completed house and lot were sold, secured by a mortgage on the property, which petitioner *259 agreed to subordinate to construction loan mortgages placed on the property by the builders. Jones then transferred these lots to the various builders at the same price he agreed to pay petitioner and obtained from the builders the exclusive right to sell the houses when completed. The builders paid $500 cash and gave notes secured by mortgages on the property which Jones immediately transferred to petitioner in payment for the lots. The cost of improvements such as street paving and water and sewer lines, which were constructed either by the builders or the City of Upper Arlington, were prorated to the lots in the subdivision, and the proportionate part thereof was deducted from the balance of the selling price petitioner received when the completed houses and lots were sold. Twenty-eight lots in the Extension No. 1 Subdivision were conveyed to Jones under the above arrangements in 1956, 27 [1] additional lots were conveyed in 1957, and all the remaining lots except 1 were conveyed in the years 1958 through 1962. After the lots were conveyed to Jones he conveyed them to builders who constructed houses thereon for sale. *260 Based on the facts as found in the Court of Claims and adopted by this Court, we conclude that the lots sold by petitioner from the Winsdor Place Addition Extension No. 1 Subdivision in Upper Arlington, Ohio, in 1957 were properties held by petitioner primarily for sale to customers in the ordinary course of his trade or business. This, we find, was his primary and principal purpose with respect to the property in 1957, which was of first importance to him. See Malat v. Riddell, 383 U.S. 569. It follows that the gain realized thereon is taxable as ordinary income, sec. 1221, I.R.C. 1954, and respondent's determination must be sustained. The issue with which we are confronted is eminently one of fact and our conclusion as to the ultimate fact is dispositive of the case. We add that in our opinion the Court of Claims has properly applied the principles and criteria, used by the courts in deciding the numerous cases involving this issue, particularly the most recent pronouncement of the Supreme Court in this area, Malat v. Riddell, supra, in reaching its conclusion with respect to the purpose for which petitioner held this entire property *261 in 1956. Reference is made to the opinion of the Court of Claims, supra, for a discussion of the principles applied in reaching its conclusion for the year 1956. There was no material change in petitioner's activities relating to the property between 1956 and 1957; nor was there any change in petitioner's purpose for holding the property. Application of the principles and criteria referred to in the Court of Claims opinion to the facts as they existed in 1957 points to the conclusion that petitioner put this property together and subdivided it for the primary purpose of selling it to anyone who would buy the lots, that this was an active business venture for petitioner, although it was not his only one, entered into in 1955 and 1956 and continuing at least through the year 1957, and that the lots sold by petitioner from this subdivision in 1957 were held primarily for sale to customers in the ordinary course of his trade or business, the same as were the lots sold in 1956. All of the evidence supports the conclusion that at least since petitioner agreed to buy the Spires' property in 1954, his principal and only objective was to subdivide, develop, and sell this property in lots because *262 that would produce the greatest profit. The evidence does not support the conclusion that petitioner was simply a passive investor in this property in the years subsequent to 1954 or that he was forced to subdivide the property to liquidate his investment therein. Compare Estate of William D. Mundy, 36 T.C. 703. The mere fact that petitioner used a somewhat indirect method of transferring the lots to the ultimate users thereof does not change the situation. Bauschard v. Commissioner, 279 F. 2d 115. Decision will be entered for the respondent. Footnotes
1. The opinion of the Court of Claims indicates that 28 lots were transferred in 1957. Petitioner's 1957 return and the notice of deficiency indicate that 27 lots were transferred in that year. There is no dispute between the parties on this point and we will not try to resolve it.↩