HOWARD E. FERGUSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ferguson v. Commissioner
Docket No. 31491-83.
United States Tax Court
T.C. Memo 1987-257; 1987 Tax Ct. Memo LEXIS 257; 53 T.C.M. (CCH) 864; T.C.M. (RIA) 87257; May 21, 1987. John Kennedy Lynch, for the petitioner. Richard S. Bloom, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined deficiencies in petitioner's Federal income tax as follows: Taxable Year Ended
Deficiency
December 31, 1976
$346,525
December 31, 1977
33,235
After concessions, [1] the sole issue for determination is whether property owned by petitioner was held *258 primarily for sale to customers in the ordinary course of his trade or business within the meaning of section 1221(1) thereby resulting in ordinary income to petitioner upon the sale of the property in 1976. [2]
*259 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts, the supplemental stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Westlake, Ohio, when he filed his petition in this case. In 1969, petitioner commenced working in the real estate field as a real estate salesman. During 1971 through 1973, petitioner was associated with Cleary Realty Company as an owner and employee. In 1973, petitioner was president and 100 percent owner of Professional Condominiums of America, Inc. (PCA). Petitioner operated PCA until 1979 as a real estate company which marketed condominiums, apartments, and homes. From 1971 until 1976, petitioner's principal real estate activity consisted of the acquisition of apartment buildings and complexes, the conversion of these buildings and complexes into condominiums, and the resulting sale of the individual condominium units. As an individual or through a partnership, petitioner converted between 38 and 44 apartment buildings or complexes into condominiums during this period. [3]
*260 By an agreement dated May 26, 1971, petitioner and J. R. Cleary (Cleary) purchased property known as Northwoods Apartments. [4] Petitioner and Cleary paid $1,925,000 as the total purchase price for this property. Thereafter, on August 31, 1971, the Northwoods Apartments' partnership was formed with 16 partners. Two of the 16 partners were Cleary and petitioner. After the Northwoods Apartments' partnership was formed, petitioner and Cleary as individuals sold the Northwoods Apartments' property to the partnership for $2,250,000. The Northwoods Apartments' partnership agreement states that the purpose of the partnership: is to acquire, manage and operate apartment buildings consisting of 160 suites * * * hereinafter referred to as "Northwoods Apartments". Moreover, the partnership agreement states that: It is intended that Northwoods Apartments shall be converted into a condominium within the next two to *261 five years. All condominium units shall be listed with Cleary Realty Company as exclusive broker for the sale of such condominium units. Beginning in 1973, petitioner contacted the 15 other partners in the Northwoods Apartments' partnership concerning his purchase of their partnership interests. By the end of 1973, 14 partners remained. At the end of 1974, only two original partners of the Northwoods Apartments' partnership remained in the partnership. These two partners were Andrew Ungar and petitioner. The partners who sold their interests in Northwoods Apartments' partnership received condominiums or partnership interests in another partnership. During 1974, petitioner contacted a number of realtors and prospective buyers in an attempt to sell Northwoods Apartments as a single rental complex or separate buildings. One potential buyer, Peter E. Shimrak, made an offer in 1974 on Northwoods Apartments but could not obtain appropriate financing. On October 15, 1975, a declaration of condominium ownership was filed with the Cuyahoga County, Ohio, recording office. On December 20, 1975 a new partnership agreement for the Northwoods Apartments' partnership was executed between *262 John Cvetic, Andrew Ungar, and petitioner. This partnership agreement contains much of the same language as the original partnership agreement. However, it does not contain the paragraph which states that the apartments will be converted into condominiums within two to five years. During late 1975 and early 1976, petitioner performed renovations and repairs totaling over $100,000 on the Northwoods Apartments. Petitioner also advertised several times in area newspapers on the availability of condominiums for sale. [5]
In particular, on April 4, 1976, the Cleveland Plain Dealer ran a feature article in its Real Estate Section on the Northwoods Apartments' condominium conversion. The article stated in part: The latest condominium conversion by Professional Condominiums of America, Inc. is Northwoods Condominium at 23855 David Dr., North Olmsted. * * * Howard E. Ferguson, president *263 of Professional Condominiums and owner of Northwoods, said: "We started contacting residents about a month ago and to date have had a tremendous response. We have sold more than half to existing tenants." * * * Ferguson said: "We have spent over $100,000 in completely redecorating all the common areas which include hallways, lobbies, laundry rooms, party room and landscaping. Next will be $50,000 on a new driveway and parking lot." On May 1, 1976, the partnership interests of Ungar and Cvetic were transferred to petitioner. Between May 1, 1976, and September 30, 1976, all 160 condominium units of Northwoods condominiums were sold. Cleary Realty Company served as broker for the sales. The purchases were made as follows: Number of Purchasers
No. of Units Purchased
1
8
1
7
7
4
4
3
17 2
Seventy one remaining condominium units were purchased singly. Thirty four of these units were sold to residents of Northwoods Apartments. The gain from the sale of Northwoods condominium units in the amount of $1,128,506 during 1976 is taxable entirely to petitioner. From a careful examination of the record and, in particular, the events of late 1975 and early *264 1976, we find that Northwoods condominium was held primarily for sale in petitioner's ordinary course of his business in 1976. On his Form 1040 for the taxable 1976, petitioner reported $1,102,052 of $1,128,506 of the Northwoods condominium sales as long term capital gain. [6] Petitioner reported the remaining portion of $26,454 as ordinary income. From 1972 through 1976, petitioner consistently reported the gain on the sale of condominium units as capital gain. On September 14, 1983, respondent issued to petitioner a notice of deficiency with respect to taxable years 1976 and 1977. Respondent determined that petitioner's sales of condominium units shown on his 1976 tax return was ordinary income rather than capital gain income as the property was held primarily for sale in the ordinary course of petitioner's trade or business. Petitioner did not contest respondent's *265 adjustments in income for the sale of condominium units by a partnership called Condominium Conversions. However, petitioner does contest respondent's recharacterization of the sale of Northwoods condominiums as ordinary income. OPINION The sole issue before this court is whether petitioner held the Northwoods Apartments primarily for sale to customers in the ordinary course of his trade or business within the meaning of section 1221(1) thereby resulting in ordinary income to petitioner upon the sale of the property in 1976. Petitioner contends that the sale of the Northwoods Apartments in 1976 was a liquidation of assets of the partnership and that the property sold was not property held primarily for sale to customers in the ordinary course of business. Petitioner asserts that when he initially bought the property he had intended to convert the apartments into condominiums. However, shortly after acquisition of the Northwoods Apartments in 1971, petitioner abandoned his plan to convert the apartments into condominiums due to their construction and due to economic conditions during the early seventies. [7] When the leasing operations became financially burdensome, petitioner, *266 within the Northwoods Apartments' partnership, tried to liquidate the apartments by selling the buildings. He was unsuccessful. When the decision was made to convert the apartments into condominiums, petitioner asserts that his intent was to liquidate the property. Under such circumstances, petitioner concludes that a liquidation of assets of the partnership occurred and that the property was not held primarily for sale to customers in the ordinary course of business and, as such, should be a capital gain. In contrast, respondent points to various factors which he asserts establish that petitioner held this property in the ordinary course of his real estate business. First, respondent notes that the Northwoods Apartments' partnership, of which petitioner was general partner, acquired the Northwoods Apartments' properties with the intent to convert the complex into condominiums within two *267 to five years. Second, when petitioner became sole owner of the property in 1976, he did so with the intention of converting the apartments and selling them as individual condominium units. Third, respondent notes that petitioner began to sell the condominium units immediately after acquiring their ownership. Prior to the sale of these condominium units, substantial improvements were made. Moreover, respondent asserts that petitioner advertised the sale of the condominium units in the Cleveland Plain Dealer. Together with several other factors, respondent reaches the conclusion that petitioner held the Northwoods Apartments' property "principally" for sale to customers in the ordinary course of his business. As a result, respondent finds that petitioner's property does not qualify for capital asset treatment under section 1221(l) and, upon the sale of the Northwoods condominium units, petitioner should recognize ordinary income gain. The burden of proof is on petitioner to overcome respondent's determination that petitioner's interest in the Northwoods Apartments was property held primarily *268 for sale in the ordinary course of his trade or business. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). Moreover, the statute providing favorable treatment for capital gain is a relief provision and is to be narrowly construed. Commissioner v. P.G. Lake, Inc.,356 U.S. 260, 265 (1958); Corn Products Refining Co. v. Commissioner,350 U.S. 46, 52 (1955). Initially, we note that excluded from the definitions of both a "capital asset" under section 1221[8] and "property used in the trade or business" under section 1231[9] is "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." *269 Whether the income at issue arose from the operation of a trade or business or from investment is a question of fact. Philhall Corp. v. United States,546 F.2d 210, 214 (6th Cir. 1976); Daugherty v. Commissioner,78 T.C. 623, 628 (1982); Bauschard v. Commissioner,31 T.C. 910, 915 (1959), affd. 279 F.2d 115, 117 (6th Cir. 1960). The purpose of our inquiry is to determine whether the property was held primarily for sale to customers in the ordinary course of petitioner's trade or business at the time of sale or disposition.In making this determination, we must consider not only whether petitioner held the property primarily for sale to customers but also whether the property was for sale in the ordinary course of petitioner's trade or business. Buono v. Commissioner,74 T.C. 187, 199-200 (1980); Howell v. Commissioner,57 T.C. 546, 555 (1972). [10] Although petitioner's purpose in acquiring the property is to be considered, that purpose is subject to change. Bauschard v. Commissioner,31 T.C. at 917. *270 Property acquired for one purpose may be held subsequently with a different intention. Biedenharn Realty Co., Inc. v. United States,526 F.2d 409 (5th Cir. 1976). In deciding whether property is held "primarily for sale", the Sixth Circuit has set forth eight factors to be considered. Case v. United States,633 F.2d 1240, 1245 (6th Cir. 1980); Mathews v. Commissioner,315 F.2d 101, 107 (6th Cir. 1963). These eight factors are: (1) the purpose for which the property was acquired; (2) the purpose for which the property was held; (3) the extent of improvements made to the property; (4) the frequency, number, and continuity of sales; (5) the nature and substantiality of the transactions; (6) the nature and extent of the taxpayer's dealings in similar property; (7) the extent of advertising to promote sales; and (8) whether or not the property was listed for sale either directly or through brokers. See also Gartrell v. United States,619 F.2d 1150, 1154 (6th Cir. 1980); *271 Broughton v. Commissioner,333 F.2d 492, 495 (6th Cir. 1964). The foregoing considerations have no independent significance; they are merely factors to help us decide, on the basis of the record as a whole, whether petitioner held Northwoods Apartments primarily for sale to customers in the ordinary course of his trade or business in 1976. [11]Bauschard v. Commissioner, 279 F.2d at 118. Our factual analysis is guided by judicial construction of the statutory phrase "held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." First, as this Court has noted, the statute uses *272 the word "held"; thus, while the taxpayer's purposes in acquiring the property is relevant, the ultimate question is the purpose for which the property is held during the period of sales. Pointer v. Commissioner,48 T.C. 906, 916 (1967), affd. 419 F.2d 213 (9th Cir. 1969); Bauschard v. Commissioner, 31 T.C. at 917, 279 F.2d at 117. [12]
Second, in Malat v. Riddell,383 U.S. 569, 572 (1966), the Supreme Court interpreted "primarily" in the phrase "primarily for sale" to mean "of first importance" or "principally." Thus, if a taxpayer's purpose in holding property is multiple, the sale purpose must be more than substantial, it must be the primary purpose. Finally, the property must be held in the "ordinary course of his trade or business." Merely holding property with the ultimate intention of *273 reselling is insufficient to disqualify income from characterization as capital gain. A taxpayer's activities with respect to the property must constitute the conduct of a trade or business. Howell v. Commissioner,57 T.C. at 555. [13]
On a careful review of the record in this case in context with the eight factors cited in Case v. Commissioner,supra, we find that petitioner held the property primarily for sale to customers in the ordinary course of his real estate business. First, petitioner admitted that he acquired the property in 1971 with the intention of converting the apartments into condominiums. Second, although petitioner asserts that his intention *274 changed due to economic conditions and construction problems with the apartments, the Northwoods Apartments' partnership agreement stated that it was the partnership's intention to convert the property from apartments to condominiums within two to five years. The apartments were acquired in 1971 and were sold by petitioner in 1976 as condominiums. While real estate sales may have been difficult during the early 1970s, we found petitioner's testimony that he only held the property for rental purposes shortly after acquisition to be questionable. Third, petitioner made improvements to the property in late 1975 and early 1976 in the amount of approximately $158,000 prior to sales of the condominiums. Fourth, the 160 units were sold to 101 different purchasers and the sales occurred from May 1976 until November 1976. Fifth, the sale of the condominium units gave petitioner a profit of over $1,000,000. Sixth, petitioner advertised in the Cleveland Plain Dealer on four different occasions. Moreover, the condominium conversion of Northwoods Apartments was a feature article in the Cleveland Plain Dealer. Seventh, petitioner's business is to convert apartments into condominiums. Finally, *275 the property was listed for sale as condominiums through brokerage services. While the second partnership agreement between Cvetic, Ungar and petitioner executed December 20, 1975, contained no mention of the intention to convert the Northwoods Apartments to condominiums, we find that this is not a case of frustration of petitioner's original business purpose to convert the property into condominiums and a subsequent liquidation of the property. Petitioner's testimony was littered with inconsistencies and confusion. Petitioner testified that there was no formal advertising of the condominiums; however, advertisements appeared in the Cleveland Plain Dealer four times in 1976 and an article appeared on the first page of the real estate section of a Sunday edition of the Cleveland Plain Dealer. Moreover, it appears as if petitioner's business, Professional Condominiums of America, Inc., did much of the marketing for the sale of the Northwoods condominiums. Additionally, petitioner testified that there were no model suites and no realtors were contacted. However, on January 1, 1976, petitioner wrote Joe Callari of Cleary Realty Company confirming their understanding of the Northwoods *276 Condominium real estate commission and discussing open houses and model suites. The advertisements infer that model suites were available for viewing by potential buyers. Taken as a whole, we must discount petitioner's testimony and, instead, carefully examine the other evidence from the record to reach our determination. In light of the foregoing observations, we agree with respondent that petitioner held the Northwoods property primarily for sale in the ordinary course of his real estate business. As a result, we find that the Northwoods Apartments' property falls within the exception to capital asset treatment of section 1221(1). Consequently, petitioner recognized ordinary income upon the sale of the condominium units of the Northwoods condominiums. Accordingly, we sustain respondent's determination. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. In his statutory notice of deficiency dated September 14, 1983, respondent increased petitioner's partnership ordinary income for the 1976 taxable year by $1,111,567. Of this amount, $1,102,052 represented income from the sale of Northwoods Apartments, the sale at issue before us. An additional amount of $9,515 was attributable to other sources. Moreover, for the taxable years 1976 and 1977, respondent adjusted petitioner's charitable contributions, interest expense deduction, net operating loss deductions, and medical expense deductions. Thus, petitioner's increase in tax was $346,525 and $33,235 for the taxable years 1976 and 1977, respectively. In his petition filed November 7, 1983, petitioner asserts that the only deficiency in dispute is a deficiency of $332,105 for the taxable year 1976. However, nowhere in the record does petitioner lend support to the reason for stating this amount. Moreover, in his petition, petitioner does not contest the other adjustments to income made by respondent for the taxable years in issue. In his answer filed December 27, 1983, respondent admits that the taxable year in 1977 is not in dispute but alleges that the entire deficiency of $346,525 is in dispute for taxable year 1976. ↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
3. During 1971, petitioner formed 12 partnerships for the purpose of converting apartment buildings or complexes into condominiums. Ten partnerships were formed with an individual named J. R. Cleary.↩
4. The Northwoods Apartments complex was located in North Olmsted, Ohio. It was close to shopping and transportation. The complex had 160 units, located in six separate buildings with swimming pool, clubhouse, and play area. The apartments were two-story walk-ups.↩
5. Petitioner ran large advertisements for the Northwoods Condominiums in the classified section of the Cleveland Plain Dealer on April 4, 1976, April 11, 1976, April 25, 1976, and May 16, 1976. The advertisement listed Professional Condominiums of America, Inc. as the syndicator of the sale.↩
6. Form 4797 attached to Northwoods Apartments Partnership's Form 1065 states that the gross sales price of the 160 partnership units was $3,010,302. After adjustment for basis and depreciation, the total gain was $1,128,506. Of this gain, $26,454 was depreciation recapture and correctly declared as ordinary income.↩
7. It is unclear from the record what the exact problem was with the construction of Northwoods Apartments. The apartments were two-story walk-ups with wooden floors. Petitioner testified that it was a "very nice apartment building" but there was nothing "unique" or "special" about it.↩
8. SEC. 1221. CAPITAL ASSET DEFINED. For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include -- (1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business; * * * ↩
9. SEC. 1231. PROPERTY USED IN THE TRADE OR BUSINESS AND INVOLUNTARY CONVERSIONS. * * * (b) Definition of Property Used in the Trade or Business. -- For purposes of this section -- (1) General Rule. -- The term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 167, held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not -- * * * (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, * * *↩
10. Erfurth v. Commissioner,T.C. Memo. 1987-232↩.
11. As each case necessarily turns on its own facts and on the required balancing of all relevant factors, an attempt to individually distinguish or resolve a case with the prior cases is unnecessary. Indeed, such attempts must necessarily be "foreboding and unrewarding." Thompson v. Commissioner,322 F.2d 122, 127 (5th Cir. 1963). Bynum v. Commissioner,46 T.C. 295, 299↩ (1966). However, we have examined the cases cited by petitioner and find them to be distinguishable from the case before us.
12. See also Bush v. Commissioner,T.C. Memo. 1977-75, affd. per curiam 610 F.2d 426↩ (6th Cir. 1979).
13. This approach is consistent with the fundamental policy underlying the favorable treatment allowed to capital gains. In Malat v. Riddell,383 U.S. 569, 572 (1966), the Supreme Court noted: The purpose of the statutory provision with which we deal is to differentiate between the "profits and losses arising from the everyday operation of a business" on the one hand * * * and "the realization of appreciation in value accrued over a substantial period of time" on the other. * * *↩